

**FILED & ENTERED**

**FEB 20 2024**

**CLERK U.S. BANKRUPTCY COURT**
**Central District of California**
**BY** llewis     **DEPUTY CLERK**

# UNITED STATES BANKRUPTCY COURT
# CENTRAL DISTRICT OF CALIFORNIA
# LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>Aleksandr Vitalievich Sabadash,<br><br>                              Debtor. | Case No.:   2:23-bk-15574-NB<br><br>Chapter:    15<br><br>**MEMORANDUM DECISION GRANTING PETITION FOR RECOGNITION OF FOREIGN PROCEEDING**<br><br><u>Prior Hearing:</u><br>Date:  November 14, 2023<br>Time:  2:00 p.m.<br>Place: Courtroom 1545<br><br><u>Continued Hearing:</u><br>Date:  February 20, 2024<br>Time:  2:00 p.m.<br>Place: Courtroom 1545<br>           255 E. Temple Street<br>           Los Angeles, CA 90012<br>(or via ZoomGov per posted procedures) |

At the Prior Hearing listed above, this Court heard arguments on the petition for recognition (dkt. 1) filed by Alexander Ivanovich Gavva ("Mr. Gavva"), who is the foreign representative of the insolvency proceedings of Debtor ("Mr. Sabadash") pending in the Russian Courts (the "Russian Bankruptcy Proceeding"). For the reasons set forth below, this Bankruptcy Court will issue a separate order GRANTING the petition and recognizing the Russian Bankruptcy Proceeding.[1]

---

[1] Unless the context suggests otherwise, a "chapter" or "section" ("§") refers to the United States Bankruptcy Code, 11 U.S.C. § 101 et seq. (the "Bankruptcy Code"), a "Rule" means the Federal Rules of Bankruptcy Procedure or other

-1-

## 1. PARTIES AND PROCEEDINGS

The Russian Bankruptcy Proceeding is related to other proceedings involving Mr. Sabadash both in the United States of America ("United States") and in the United Kingdom of Great Britain and Northern Ireland ("Britain"). In the United States, this Court is presiding over *In re Golden Sphinx Limited* (Bankr. C.D. Cal., Case No. 2:22-bk-14320-NB), which is an entity in which Mr. Sabadash asserts an indirect ownership interest, which indirectly owns a mansion in Beverly Hills, California. Other litigation is pending both in the Federal District Court and in the California Superior Court within this district.

In Britain, there are insolvency proceedings pending in the Royal Court of Jersey (the "Jersey Proceeding"), and this Bankruptcy Court has granted recognition to the Jersey Proceeding as a foreign main proceeding in relation to the *Golden Sphinx* bankruptcy case. *See* Order (Case No. 2:22-bk-14320-NB, dkt. 42). Related litigation is pending in other parts of Britain.

Other parties in interest include: Mr. Sabadash's wife, who is divorcing him in pending proceedings in the California Courts; Mr. Garry Y. Itkin, who is a creditor of Mr. Sabadash; and the foreign representatives in the Jersey Proceeding, Andrew Wood and Alexander Adam (the "Jersey Representatives"). Those parties have not sought to participate in these recognition proceedings, but their claims relate to some of the issues discussed below.

---

federal or local rule, and other terms have the meanings provided in the Bankruptcy Code, Rules, and the parties' filed papers.

Turning to evidentiary issues, the objection (dkt. 48) to Mr. Sabadash's Request for Judicial Notice (dkt. 43) is OVERRULED. The material set forth in the Request for Judicial Notice either (a) was not presented to establish the truth of the matters asserted therein or (b) is otherwise admissible for the limited purposes for which it was presented. The evidentiary objections (dkt. 49) to Mr. Sabadash's declaration (dkt. 30) are also OVERRULED for the same reasons. This Court has viewed the proffered evidence included in Mr. Gavva's Reply papers in a similarly narrow vein. In addition, to the extent that the parties' statements in declarations or other documents constitute legal arguments disguised as evidence, or statements of opinion as to ultimate issues, this Court accords those statements only minimal weight. Alternatively, even if the evidentiary objections were sustained, that would not alter any of this Court's resolutions of the issues as discussed below.

**2. LEGAL STANDARDS**

    **a. Jurisdiction, authority, and venue**

    This Bankruptcy Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, section 1501 of the Bankruptcy Code and General Order No. 13-05 from the United States District Court for the Central District of California dated June 26, 2013.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P) and this Bankruptcy Court has the authority to enter a final order consistent with Article III of the United States Constitution.  Venue is proper in this district pursuant to 28 U.S.C. § 1410.

    **b. Standards for recognition of a foreign proceedings**

    The Bankruptcy Code provides:

> (a) <u>Subject to [the exception</u> in] section 1506 [<u>which authorizes this Court to "refus[e] to take an action" that "would be manifestly contrary to the public policy of the United States</u>"], after notice and a hearing, an order recognizing a foreign proceeding <u>shall</u> be entered if—
>   (1) such foreign proceeding for which recognition is sought is a foreign <u>main</u> proceeding [*i.e.,* an insolvency proceeding "pending in the country where the debtor has the <u>center of its main interest</u>" ("COMI")] or foreign <u>nonmain</u> proceeding [*i.e.,* any other insolvency proceeding "pending in a country where the debtor has <u>an establishment</u>"] within the meaning of section 1502[(4) and (5)];
>   (2) the foreign representative applying for recognition is a person or body; and
>   (3) the petition meets the requirements of section 1515 [*e.g.,* evidence of the foreign representative's authority].
> (b) Such foreign proceeding shall be recognized—
>   (1) as a foreign main proceeding if it is pending in the country where the debtor has the center of its main interests; or
>   (2) as a foreign nonmain proceeding if the debtor has an establishment within the meaning of section 1502[2] [*i.e.,* "any <u>place of operations</u> where the debtor carries out a <u>nontransitory economic activity</u>"] in the foreign country where the proceeding is pending.
> * * *
> [§ 1517 (emphasis added).]

    The "ultimate burden of proof" is on the foreign representative. *In re Ran*, 607 F.3d 1017, 1021 (5th Cir. 2010).

**c. Recognition of a foreign "main" proceeding**

As set forth above, a foreign main proceeding means one pending in a country in which a debtor has "the center of its main interest" or COMI. §§ 1502(4) & 1517. A debtor's habitual residence is presumed to be the COMI, unless the evidence shows otherwise. *Ran,* 607 F.3d at 1022. Habitual residence, although not defined in the Bankruptcy Code, means domicile. *Id.*

If Mr. Sabadash rebuts Mr. Gavva's evidence of domicile, this Bankruptcy Court must consider other evidence. *Ran,* 607 F.3d at 1023. For individual debtors, bankruptcy courts consider "factors such as (1) the location of a debtor's primary assets; (2) the location of the majority of the debtor's creditors; and (3) the jurisdiction whose law would apply to most disputes." *Id.* at 1024.

**d. Recognition of a foreign "nonmain" proceeding**

If the foreign proceeding is not a main proceeding it can be a "nonmain proceeding" if Mr. Gavva proves that Mr. Sabadash has an "establishment" in Russia. § 1502(2) & (5). To show an "establishment," Mr. Gavva must prove two elements: Mr. Sabadash "must have (1) had a place of operations in [Russia] and (2) been carrying on nontransitory economic activity in [Russia] at the time that [Mr. Gavva] brought the petition for recognition in the United States." *Ran,* 607 F.3d at 1027. "'Place of operations' is further defined as 'a place from which economic activities are exercised on the market (*i.e.,* externally), whether the said activities are commercial, industrial or professional.'" *Id.* See *In re Brit. Am. Ins. Co. Ltd.*, 425 B.R. 884, 915 (Bankr. S.D. Fla. 2010) ("The terms 'operations' and 'economic activity' require showing of a *local effect on the marketplace,* more than mere incorporation and record-keeping and more than just the maintenance of property.") (emphasis added).

**3. ANALYSIS**

**a. Mr. Gavva has standing to seek recognition of the Russian proceedings**

Mr. Sabadash argues that Mr. Gavva lacks standing as a "foreign representative" under § 101(24) because the Russian order appointing him does not authorize him to

"act abroad under Article 213.26 of the Russian Bankruptcy Law. *See* Asoskov Decl. [dkt. 33], ¶ 18." Sabadash Opp. (dkt. 29) p. 11:11-12. This Bankruptcy Court is not persuaded.

The Russian Court has expressly recognized Mr. Gavva's authority, as set forth in a proposed services agreement with a "Contractor," for Mr. Gavva to hire persons to "take all necessary legal and other actions to file … in the competent courts of the United States of America … a lawsuit (or lawsuits) for the *recognition* and enforcement … of the final or intermediate judicial acts (rulings, judgments, decisions) of the [Russian Court]." *See* Kirpichev Decl. (dkt. 4) Ex. F (Oct. 11, 2022 Ruling of Russian Court), second page (at PDF p. 39) (emphasis added). The Russian Court's authorization for Mr. Gavva to hire a person to seek recognition, as part of his mandate "to carry out activities to search for the debtor's property" (*id.,* last page, at PDF p. 41), necessarily implies the authority of Mr. Gavva himself to seek such recognition. *See* Gavva Reply (dkt. 44) pp. 5:14-6:22. Alternatively, the authorization is confirmed in a later order. *See id.* pp. 6:23-10:25; *and see* Clarification Order (Ex. G to 2d Kirpichev Decl., dkt. 46, at PDF pp. 10-12).

Mr. Sabadash argues that this was beyond the Russian Court's authority, without a separate order specifically citing Article 213.26 of the Russian Bankruptcy Law. But, assuming solely for the sake of discussion that the Russian Court might not have taken the proper predicate steps to issue the ruling it did (an issue on which this Bankruptcy Court makes no decision), the remedy for Mr. Sabadash would lie with the Russian court system, not this Bankruptcy Court.

In sum, under the extant and non-stayed rulings in the Russian Bankruptcy Proceeding, Mr. Gavva has standing. Mr. Sabadash's arguments to the contrary are unavailing.

**b. Mr. Gavva is judicially estopped to assert that Mr. Sabadash's domicile is in Russia**

Previously this Bankruptcy Court was inclined to the view that the assertions about domicile were made at sufficiently different times that they were not inconsistent. *See generally* Gavva Reply (dkt. 44) pp. 12:1-14:4.  But on further review of the record that is not so: although the date of service of process in the California State Court proceedings (July 21, 2022) is different from the date of Mr. Gavva's petition for recognition of the Russian Bankruptcy Proceeding (August 29, 2023), there is no persuasive evidence that the relevant facts pertaining to Mr. Sabadash's domicile changed during that time period.

Nor is it relevant that some of *Mr. Sabadash's* proffered evidence was submitted *after* Mr. Gavva persuaded the California State trial court to adopt his position.  Gavva Reply (dkt. 44) pp. 14:5-16:3.  What matters is whether <u>Mr. Gavva</u> persuaded a court to find a California domicile (which he did) and now seeks to persuade a different court (this Bankruptcy Court) to find otherwise.  *See generally* Sabadash Opp. (dkt. 29) pp. 14:3-15:10; Zorkin Decl. Ex. 6 (dkt. 31-7) at PDF pp. 2-9.

Nor is it relevant that the advantage gained by Mr. Gavva pertained to a different issue (service of process), or that both he and Mr. Sabadash had fallback arguments. Gavva Reply (dkt. 44) p. 16:4-20.  The point, again, is that Mr. Gavva gained an advantage, not whether he has prevailed or will prevail on all issues.  *See generally* Sabadash Opp. (dkt. 29) pp. 14:3-15:10.

The bottom line is that both parties have taken inconsistent positions about whether Mr. Sabadash is domiciled in California or Russia: before the California Courts Mr. Sabadash argued that it was Russia and Mr. Gavva argued the contrary, and in this Bankruptcy Court their positions have flipped.  But Mr. Gavva prevailed on that issue: he persuaded the California Courts that Mr. Sabadash is domiciled in California. Whether right or wrong, he must be bound by that determination.  *See* Sabadash Opp. (dkt. 29) pp. 14:3-17:15.

### c. But other factors establish that Russia is the COMI for Mr. Sabadash

As set forth above, bankruptcy courts consider "factors such as (1) the location of a debtor's primary assets; (2) the location of the majority of the debtor's creditors; and (3) the jurisdiction whose law would apply to most disputes." *Ran,* 607 F.3d at 1024. On balance, these factors favor recognizing Russia as the COMI for Mr. Sabadash.

#### (1) Asset location favors Russia

Mr. Sabadash argues that he no longer has any assets in Russia because his indirect ownership of the Vyborg Factory was "pilfered soon after his 2014 arrest." Sabadash Opp. (dkt. 29) p. 17:22 *et seq.* (citation omitted). But at the same time Mr. Sabadash asserts claims to unwind the transfer of the Vyborg Factory, sometimes referred to as the VLK Proceeding. *See id.* pp. 2:8-3:21 *and, e.g.,* pp. 7:8-8:26. Indeed, Mr. Sabadash believes that the main purpose of Mr. Gavva's petition for recognition of the Russian Bankruptcy Proceeding is to take control of his assets, including control over the VLK Proceeding, and thereby "stop all litigation in Russia aimed at recovering" his indirect ownership of the Vyborg Factory. Sabadash Decl. (dkt. 30) ¶ 11 at pp. 4:27-5:2.

Bankruptcy proceedings often involve "disputed," "contingent," and "unliquidated" claims. *See, e.g.,* § 502(c). The fact that some or all of those adjectives might apply to Mr. Sabadash's indirect ownership of the Vyborg Factory does not mean that this Bankruptcy Court can ignore the locus of that asset – whether it is viewed as a possible tangible ownership interest or as an intangible legal claim. In other words, to the extent Mr. Sabadash has any indirect property interests in the Vyborg Factory, that property is located in Russia. *See* Gavva Reply (dkt. 44) pp. 17:3-19:2.

True, Mr. Sabadash also has a disputed claim to indirect ownership of a mansion in Beverly Hills – in which his divorcing wife and Mr. Itkin also assert interests. *See generally* Sabadash Opp. (dkt. 29) pp. 27:8-29:2. But, as valuable as that mansion might be, Mr. Sabadash has not asserted that its value is more than the value of the Vyborg Factory.

For these purposes, this Bankruptcy Court has disregarded references in various papers to the possible dollar values of assets. For example, the Beverly Hills mansion has been referred to as having a possible value of $40 million in some of the *Golden Sphinx* proceedings; and, based on unspecified business records, Mr. Sabadash purportedly has valued the Vyborg Factory at "substantially higher than $60 million." Dupak Decl. (dkt. 45) ¶ 12 at p. 3:22-26.

Although these numbers would support this Bankruptcy Court's conclusion that Mr. Sabadash's "primary" assets are in Russia, this Court repeats that it has not relied on these numbers. The point is only that Mr. Gavva has asserted, based on the value of the Vyborg Factory, that the principal assets are in Russia; he is in a position to know the rough value of assets (as the administrator of the Russian Bankruptcy Proceeding); and Mr. Sabadash has not rebutted that evidence.

For all of the foregoing reasons, this Bankruptcy Court finds that the location of the primary assets is Russia.

### (2) Creditor location is neutral

Mr. Sabadash argues that the largest and earliest (disputed) claim is asserted in California, by Mr. Itkin. *See* Sabadash Opp. (dkt. 29) p. 20:1-7. This Bankruptcy Court considers this factor to be neutral. Mr. Itkin's claim is larger and earlier, but the Banks' claims are twice as many (two against one) and also are very substantial. *See* Gavva Reply. (dkt. 44) pp. 19:12-20:3.

### (3) Applicable law favors Russia

Mr. Sabadash argues that "the only dispute" between him and his Russian creditors "is whether the California court should recognize the Russian judgments" under California Code of Civil Procedure §§ 1713 et seq. (the Uniform Foreign Country Money Judgment Recognition Act). But, as noted above, Mr. Sabadash argues that in the Russian Courts he should be able to unwind the transfer of the Vyborg Factory. *See* Sabadash Opp. (dkt. 29) pp. 2:8-3:21. This Bankruptcy Court agrees with Mr.

Gavva that Russian law predominates as between him and his creditors who are involved in the Russian Courts. *See* Gavva Reply (dkt. 44) pp. 20:4-21:5.

### (4) Conclusion under § 1517(a)&(b)(1): Russia is the COMI for Mr. Sabadash

For the foregoing reasons, this Bankruptcy Court concludes that the Russian Bankruptcy Proceeding is a foreign main proceeding.

### d. Alternatively, the Russian Bankruptcy Proceeding is a foreign nonmain proceeding

For the same reasons set forth above regarding the location of Mr. Sabadash's assets – his disputed, indirect ownership of the Vyborg Factory – this Bankruptcy Court finds on the record presented that he has a "place of operations" in Russia. There is no dispute that the factory's industrial or commercial operations are in Russia. Accordingly, assuming for the sake of discussion that the Russian Bankruptcy Proceeding were not a foreign "main" proceeding (which it is), it would qualify as a foreign "nonmain" proceeding.

### e. The public policy exception does not apply

As noted above, recognition of foreign proceedings can be limited to the extent such recognition "would be manifestly contrary to the public policy of the United States." § 1506. This public policy exception is "to be interpreted restrictively," and "should be invoked only under exceptional circumstances concerning matters of fundamental importance to the United States." *In re Foreign Econ. Indus. Bank Ltd., "Vneshprombank" Ltd.*, 607 B.R. 160, 169–70 (Bankr. S.D.N.Y. 2019).

At the Prior Hearing this Bankruptcy Court issued an oral tentative ruling that recognition of the Russian Bankruptcy Proceeding would indeed be "manifestly contrary to the public policy of the United States" because (1) the major (or only) creditors in that proceeding are Russian banks (Gavva Decl. (dkt. 3) at ¶ 11; Sabadash Decl. (dkt. 30) at ¶ 4); (2) <u>recognition might enable those Russian banks to seize assets here in the United States</u>; and (3) a key objective of the foreign policy of the United States has

been to cut off funding for Russia's war against Ukraine by isolating the Russian financial system from the rest of the world. See Appx. (dkt. 35) Ex. 4 (at PDF pp. 37-41).

But, based on the arguments and evidence cited at the Prior Hearing, and this Bankruptcy Court's own review of the record, it appears that recognition of the Russian Bankruptcy Proceeding would only allow the adjudication of control of assets already in Russia. There would be no apparent effect on the funding or lack of funding of the Russian war against Ukraine. In addition, Mr. Gavva's counsel orally offered to limit any order recognizing the Russian Bankruptcy Proceeding to preclude any transfer of assets from the United States absent further order of this Bankruptcy Court.

For all of these reasons, the public policy exception does not apply.

**f. Mr. Sabadash has not established a lack of "good faith" by Mr. Gavva that would be sufficient to change the foregoing analysis**

This Bankruptcy Court has carefully reviewed the assertions by Mr. Sabadash as to a purported lack of good faith by Mr. Gavva. *See* Sabadash Opp. (dkt. 29) pp. 25:20-28:4. Whatever suspicions and theories Mr. Sabadash has, he has not established on the present record any lack of good faith, nor that he lacks an adequate remedy in the Russian Bankruptcy Proceeding if he were able to show any lack of good faith.

**g. No injunction of Mr. Gavva's administration of assets**

Mr. Sabadash argues that the purportedly "troubling relationship between Mr. Gavva, Tavrichesky Bank, and the VLK Proceeding requires careful limitations on Mr. Gavva's right to influence the VLK Proceeding if the Bankruptcy Court grants recognition" of the Russian Bankruptcy proceeding. Sabadash Opp. (dkt. 29) p. 29:5-7. But, first, there is insufficient evidence of any "troubling" relationship between Mr. Gavva and the creditors in the Russian Bankruptcy Proceeding.

Second, and alternatively, it would be extraordinary for this United States Bankruptcy Court to purport to supersede the authority of the Russian Courts to control the Russian Bankruptcy Proceeding by enjoining the administrator of that proceeding.

1  The only apparent basis to do so is that Mr. Gavva might have to act through a
2  California entity – *i.e.,* he might have to use Mr. Sabadash's 100% ownership of the
3  California-based entity AFB Trading One, Inc. ("AFB"), which is the 100% owner of
4  Vyborg Limited, which is the 100% former owner of Vyborgskaya Lesopromyshlennaya
5  Korporaciya ("VLK"), which owns the Vyborg Factory in Russia.  But that is too thin a
6  reed on which to hang such control.

**h. No additional continuance of these recognition proceedings is warranted**

Mr. Sabadash requests that these recognition proceedings be continued until after further proceedings in the Russian Bankruptcy Proceeding.  Sabadash Opp. (dkt. 29) p. 30:1-9.  First, the requested extension was only until after December 11, 2023, which has already passed.  *Id.*  Second, if Mr. Sabadash wishes to obtain a stay of Mr. Gavva's acts, he should seek such relief in the Russian Courts.

//

**4. CONCLUSION**

This Bankruptcy Court acknowledges that it can take judicial notice of widespread suspicion about the legitimacy of some Russian Courts' proceedings. For example, there has been considerable negative press about the incarceration and death of opposition leader Alexei Navalny.

But, turning to the actual matter before this Bankruptcy Court, Mr. Sabadash has not established that any suspicions about the Russian Bankruptcy Proceeding are sufficient for the limited public policy exception in § 1506 to apply. To the contrary, this Bankruptcy Court is persuaded that the standards mandated by Congress require the recognition of the Russian Bankruptcy Proceeding.

For all of the foregoing reasons, this Bankruptcy Court will issue a separate order GRANTING Mr. Gavva's petition and recognizing the Russian Bankruptcy Proceeding. The parties are directed to address, at the Continued Hearing set forth in the caption, any next steps and procedural issues. The tentative ruling is to direct Mr. Gavva to lodge a proposed order implementing this Memorandum Decision within seven days after the Continued Hearing.

###

Date: February 20, 2024

Neil W. Bason
United States Bankruptcy Judge