1

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

-oOo-

In Re:                              ) Case No. 2:23-Bk-15574-NB
                                    ) Chapter 15
ALEKSANDR VITALIEVICH               )
SABADASH                            ) Los Angeles, California
                                    ) Tuesday, February 20, 2024
                          Debtor.   ) 2:00 PM
_____ )
                                    #1.00 CONT'D HRG RE:
                                    APPLICATION FOR RECOGNITION
                                    OF FOREIGN MAIN PROCEEDING,
                                    OR IN THE ALTERNATIVE, FOR
                                    RECOGNITION OF FOREIGN
                                    NONMAIN PROCEEDING AND
                                    CERTAIN RELATED RELIEF
                                    FR. 11/14/23, 12/5/23,
                                    12/19/23, 01/10/24

                                    #2.00 CONT'D STATUS
                                    CONFERENCE RE: RECOGNITION OF
                                    A FOREIGN PROCEEDING
                                    FR. 11/14/23, 12/5/23,
                                    12/19/23, 01/10/24

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE NEIL BASON
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:
For the Debtor:            KEITH C. OWENS, ESQ.
                            Fox Rothschild LLP
                            10250 Constellation Boulevard
                            Suite 900
                            Los Angeles, CA 90067
                            (310)598-4150

                           MICHAEL ZORKIN, ESQ.
                            The Zorkin Firm
                            6320 Canoga Avenue
                            15th Floor
                            Woodland Hills, CA 91367
                            (323)493-8075

2

For Foreign                      SCHUYLER G. CARROLL, ESQ.
Representative:                  ALEX STOLYAR, ESQ.
                                  Loeb & Loeb LLP
                                  10100 Santa Monica Boulevard
                                 Suite 2200
                                 Los Angeles, CA 90067
                                 (310)282-2000


For Alexander Adam and           RONALD HOWARD, ESQ.
Andrew Wood, Foreign             Togut, Segal & Segal LLP
Representatives to Golden        One Penn Plaza
Sphinx Limited:                  Suite 3335
                                  New York, NY 10119
                                 (212)594-5000


Court Recorder:                  SHARON SUMLIN / DINA JOHNSON
                                 United States Bankruptcy Court
                                 Edward R. Roybal Federal Building
                                 255 East Temple Street
                                 Room 940
                                 Los Angeles, CA 90012
                                 (855)460-9641


Transcriber:                     RIVER WOLFE
                                 eScribers, LLC
                                 7227 N. 16th Street
                                 Suite #207
                                 Phoenix, AZ 85020
                                 (800) 257-0885


Proceedings recorded by electronic sound recording;
transcript provided by transcription service.

Case 2:23-bk-15574-NB   Doc 98   Filed 05/08/24   Entered 05/08/24 14:05:42   Desc
Main Document     Page 3 of 41
**Aleksandr Vitalievich Sabadash**

3

LOS ANGELES, CALIFORNIA, TUESDAY, FEBRUARY 20, 2024, 3:32 PM

-oOo-

(Call to order of the Court.)

THE COURT:  Okay.  So calendars 1 and 2 on the 2 o'clock matter, In re: Sabadash.

And I'll start with -- I'll start with taking appearances.

MR. OWENS:  Good afternoon, Your Honor.  Keith Owens at Fox Rothschild appearing on behalf of Mr. Sabadash.  I'm here with my cocounsel Mr. Zorkin.

MR. ZORKIN:  Good afternoon.

THE COURT:  Thank you.

MR. CARROLL:  Good afternoon, Your Honor.  This is Schuyler Carroll of Loeb & Loeb, counsel to the foreign representative.  And also with me is my colleague Alex Stolyar.

THE COURT:  Thank you.

MR. HOWARD:  Good afternoon.

THE COURT:  Go ahead.

MR. HOWARD:  Good afternoon, Your Honor.  It's Ronald Howard of Togut, Segal & Segal, here for Alexander Adam, Andy Wood, the foreign representatives to Golden Sphinx Limited.

THE COURT:  Thank you.

Anyone else?

Okay.  Okay.  So unless you let me know otherwise, I'll presume that everybody has seen the memorandum decision

4

that was issued this morning.  And as indicated in that memorandum decision, my aim for this hearing is to address procedural issues and if there's anything that we need to follow up on for that memorandum decision.

So let me start with you, Mr. Owens.

MR. OWENS:  Thank you, Your Honor.  Just for the record, again, Keith Owens for Mr. Sabadash.

Your Honor, we've looked at the ruling and sort of analyzed in detail.  I would like to address a couple of issues up front which may have a bearing on the Court's ruling.  So as a preliminary matter, we raised an issue of standing that Mr. Gavva did not have standing because the underlying December 2022 order authorized him to retain an agent to essentially determine whether there were any assets located overseas.

And then there was a subsequent order in October of 2023 that clarified it.  There was a clarifying order, and that had been on appeal.  And that clarifying order essentially purportedly clarified that the December 22 -- or the 2022 order gave Mr. Gavva some rights, gave additional rights, including the rights to commence litigation, et cetera.

Since that time, the appellate ruling -- the appellate court issued its ruling in Russia, and that appellate court essentially vacated, reversed the order determining that the clarification order was invalid, that Mr. Gavva could not essentially ask for clarification of an order that was

5

unambiguous.  The order was unambiguous that it was only with respect to the ability to retain an agent to investigate assets overseas, including in the United States, and to actually pay for the costs of that.  And we discussed that in our brief.

Your Honor, I do have a copy of the order.  We would have filed it earlier, but the Court admonished us not to file any subsequent pleadings.  And so I do have copies of the order, if you'd like me to bring it to the bench.

THE COURT:  Hold on to those for just a moment --

MR. OWENS:  Okay.

THE COURT:  -- and let me hear from the other side if there are -- but let me hear from you first if there are other things.  I think you mentioned that that was the first thing you had.  Should we turn to the other side on this issue, or do you want to proceed with other issues?  Mr. Owens.

MR. OWENS:  I think it's -- I'd like to address this issue first and then proceed with other issues.

THE COURT:  Thank you.

Mr. Carroll.

MR. CARROLL:  Yes, thank you.  Your Honor, I'm going to ask my partner to address that issue, please.

THE COURT:  Certainly.  Mr. Stolyar.

MR. STOLYAR:  Yes.  Thank you, Your Honor.

So I think counsel misrepresented the scope of the court of appeal ruling.  What the court of appeal found, as I

6

understand, is that the reverse of the clarification order was warranted because there was no need for it.  The underlying order was clear.  The court of appeal did not find, as counsel just suggested, that Mr. Gavva lacked authority to proceed here.  Instead, the court of appeal in Russia effectively found what Your Honor found in your order, was that October 11, 2022 ruling was sufficiently clear.  And so there is no need for clarification.

And as Your Honor pointed out in your order, it's the October 11th, 2022 order which gave Mr. Gavva standing to be here before Your Honor.  And the clarification order may be an alternative basis to find standing, but it's not necessary because the October 11th, 2022 order is what gave Mr. Gavva standing.  And so whatever challenge they may have related to the ultimate court of appeal ruling and clarification order is irrelevant to Your Honor's ruling.

I would further add that to the extent they want to hand any papers to Your Honor, we would appreciate copies. We'd want to review any English translation of the order they provide to Your Honor so we have an opportunity to register any objections if that translation is inaccurate.

THE COURT:  All right.  So it sounds as if I might have acted too hastily in prohibiting the parties from filing anything because maybe this would have been teed up a little if I'd let that happen.  But it is what it is.  So in terms of

7

where to go from here, I think I've issued a memorandum decision, but there's no implementing order as yet.  And so probably it makes sense to set a briefing schedule for -- and before then, of course, direct the parties to meet and confer so that they can exchange the translations and see if they've got any problems with the translation and so on.

And then there can be, I don't know, either briefing or maybe just submission of a copy of the translation under a declaration authenticating it or something like that.  And I can then decide which interpretation of the Russian proceedings I'm happy with, or I mean, I'm persuaded by, or decide if there are other avenues that we should be pursuing, such as asking the Russian courts to clarify further.  So maybe a short continuance with a deadline to file a declaration with a translation and an opportunity for both sides to address if they disagree about the translation.

Before I talk to you about dates and deadlines for that, let me just check in and see if there's anything else that we should be addressing today.

So first, Mr. Owens.

MR. OWENS:  Yes, Your Honor.  So I do have a copy of the order with the translation.  I assume the Court doesn't want me to submit it to review.  I do want to clarify one thing.  And this is, of course, a certified translation, which we will give to the other side, and they'll have an opportunity

8

to review. But what Mr. Stolyar said is not consistent with what I'm reviewing. I'll just read. And of course, he'll have the opportunity to challenge that. But it says:

"Having analyzed the content of the ruling of the arbitration court of the Moscow region dated October 11, 2022 in case number [blah, blah, blah], which recognized the justification for the involvement of the individual entrepreneur Dmitry Vladimirovich Dupak (phonetic) in order to ensure the exercise of the powers of the financial manager to carry out measures to search for the debtor's property at the expense of the creditor of Divrichi Bank JSC (phonetic), with further compensation at the expense of the debtor's property. The arbitration court of appeal concluded that it does not contain uncertainties, the clarification of which causes difficulties in understanding the executing and judicial act and does not allow for ambiguous interpretation."

And then it says -- well, briefly, Your Honor, it says:

"By submitting this petition, the financial manager actually asked for clarification, not of the ruling itself, but of the procedure for executing the ruling, indicating that the involved specialist, in addition to the right to search for the property of AV Sabadash

9

outside the Russian Federation, has the right to impose a penalty on it by initiating appropriate legal proceedings in foreign countries, which is unacceptable."

And it goes on.  And ultimately, it does vacate in reverse the decision.  It says cancel, but it's the same effect.

So I'm happy to hold off on submitting it to Your Honor or to hand it to you.  And I will email it to the other side, and we'll meet and confer on the translation, if that is acceptable to you.

THE COURT:  I think it makes sense for me not to try to act on this based on the current record but to, again, short continuance, and I think then the parties can figure out what to present to me.

So anything else before we start to talk about deadlines?

Mr. Stolyar and then --

MR. STOLYAR:  Yes.

THE COURT:  -- Mr. Caroll.  Mr. Stolyar.

MR. STOLYAR:  Yes, Your Honor.

THE COURT:  But I think your partner had his hand raised.

But I'm happy for you to go first, Mr. Caroll.  So you go first, and then Mr. Stolyar.

Case 2:23-bk-15574-NB  Doc 98  Filed 05/08/24  Entered 05/08/24 14:05:42  Desc
Main Document     Page 10 of 41
**Aleksandr Vitalievich Sabadash**

10

MR. CARROLL:  Very well, Your Honor.  Thank you.

Yes, Your Honor.  I actually think that the appropriate way to move forward would be to enter the order.  And to the extent that Mr. Sabadash believes there are grounds to reconsider it, they can make an appropriate motion.  Your Honor did obviously take a great deal of time looking at the issues, considering them, and you came to a well-reasoned decision.  We don't believe that the decision that Mr. Owens is referring to actually has any bearing on your underlying decision.  But if he believes it does, he can move forward and present an appropriate motion.

THE COURT:  Thank you.

Mr. Stolyar.

MR. STOLYAR:  You read my mind, Your Honor.  That is what I was about to say so --

THE COURT:  Okay.  Thank you.

Mr. Howard.

MR. HOWARD:  Nothing from me, Your Honor.

THE COURT:  Okay.  Thank you.

I'm interpreting Mr. Owens' statements here as an oral motion to either reconsider or at least to stay the issuance of any order implementing the memorandum decision.  And I don't think it's appropriate for me to go ahead and make my decision effective before I've had a chance to see this ruling and hear from both sides about what the ruling from the Russian courts

11

mean.

It seems to me, obviously, based on my review, that Mr. Gavva had standing.  But if the Russian courts themselves adopt a different view, I have to defer to what they say, and it's a matter of what they actually do say.  So I think it's most appropriate for me to continue this matter and set some deadlines for additional papers to be filed.

So let me talk about the dates that I've got available.  So there's March 5, just a couple of weeks from now.  And then I could set a deadline somewhere in between, say, February 27, one week from now, for the parties to both file whatever papers they're going to file regarding this ruling.  And when I say whatever papers they're going to file, what I imagine is directing the parties between now and the 27th to meet and confer.  And for Mr. Owens, direct him to send a copy of what he's got to opposing counsel this afternoon or tonight by email.

And then if both sides can agree on the translation and just have different interpretations of it, then they can file either a brief brief or a declaration from one of their legal experts, Russian legal experts or somebody, explaining why they interpret the decision of the Russian appellate court one way or another.  And I'm intentionally keeping this vague as to what the papers might be, but in my mind, the universe of possibilities would be at most, say, a five-page brief on the

12

interpretation and/or a five-page declaration on interpretation and then whatever declaration is needed to authenticate the translation that either side has, whether it's the same translation, or if the parties have different translations, then they can attach those.  So all I ask is that you make it easy for me.  And if you have a translation that differs in five words, please highlight those words so that I don't have to go flyspecking and my staff and I don't have to compare line-by-line to see what's different about one or the other.

So any objection to those dates and deadlines and procedures?

Mr. Owens.

MR. OWENS:  No, Your Honor.  Just for clarification, so the continued hearing that you're proposing is August 5th?  Or sorry, not August 5th.  March 5th?

THE COURT:  March 5th at 2 p.m.

MR. OWENS:  Which is the same date and time as, I think, you have a Golden Sphinx hearing at the same time.

THE COURT:  That sounds right, but --

MR. OWENS:  Okay.

THE COURT:  -- I don't have that -- I believe that's right.

MR. OWENS:  Okay.  And then briefing would be the -- the first submission would be -- did you say the 27?

THE COURT:  The 27th.

13

MR. OWENS:  Okay.

THE COURT:  Simultaneous.  Doesn't have to be the same time of day, but that would be the deadline, any time on the 27th for a translation, which means a declaration authenticating a translation, and the same as you've done before, with the original Russian copy and then the translation and then any accompanying declaration from a legal expert and/or brief.  But any one of those things -- any one of the latter two can only be up to five pages long.

MR. OWENS:  And then, Your Honor, would there be a reply to any submission?  No?  Just resolve that at the hearing?

THE COURT:  Just argument at the hearing.

MR. OWENS:  Okay.

THE COURT:  I mean, we can set a longer period, but I'm conscious of the fact that these interlocking matters have so many different proceedings going on, and everything has taken a long time.  So I'd be inclined to move this faster because if I get to the 5fth and it really looks as if things are confusing, I can always continue it and ask for more briefing if I need it.

MR. OWENS:  I think -- go ahead, Mr. Zorkin.

MR. ZORKIN:  Just, I'm in arbitration on March 5th. If we could go the following week, that would be great.

THE COURT:  That would be the 12th.

14

MR. OWENS:  That works for me, Your Honor.

THE COURT:  So tentatively, (indiscernible) the 12th --

MR. STOLYAR:  That works for me, Your Honor.

THE COURT:  And then if the parties want, we could build in a time to respond to each other.  So the deadline for initial papers would be February 27, response March 5, and then any reply orally at the hearing.

Mr. Stolyar.

MR. STOLYAR:  Yes, Your Honor.  I wanted to request, particularly now if the hearing is on March 12th, if we could push the initial deadline to March 5 or at least March 4.  I'm just concerned, given that we'll need to get potentially declarations from the Russian experts.  I want to make sure we have enough time to do so, and I'm concerned just one week will not give us sufficient time.

THE COURT:  That would be suitable for me.  So March 5 would be the deadline, then, for declarations and briefs, no longer than five pages each.  And that's excluding, of course, the actual ruling and translation.  If the Russian court's decision is fifty pages, then it's fifty pages.  But the accompanying declarations and briefs would be maximum of five pages each.

Okay.  Anyone else with any requested changes to that procedure?

15

Okay.  Then I guess the only other thing would be to memorialize this in an order.  So Mr. Owens, I'm going to ask you to lodge a proposed order to prepare, circulate, and then lodge a proposed order.  And I'll say what I've always say when I'm talking about lodged orders.  My staff and I tend to turn them around pretty quickly.  So if anyone has a problem with any order that is lodged, call chambers immediately so that we know to hold off on issuing it for a short time so that you have an opportunity to lodge your competing form of proposed order.

But all I'm envisioning for this order is hearings continued to March 12 at 2, March 5 deadline for declaration and brief no longer than five pages each, regarding the effect of the Russian ruling, so it should be pretty straightforward.

MR. OWENS:  Thank you, Your Honor.

THE COURT:  Okay.  Thank you all.

IN UNISON:  Thank you, Your Honor.

THE COURT:  You're welcome.

MR. OWENS:  Your Honor, with respect to the other issues to be raised, you'd asked if were there other issues, and I wanted to address the standing one first.  But there are some other issues --

THE COURT:  Ah, okay.  I thought --

MR. OWENS:  -- with respect to the decision.  I'm sorry if I -- wanted to just make sure that we had the

16

opportunity to address them with your with the Court, unless you want them in some sort of brief.

THE COURT:  Why don't you raise them initially now, and then we can see if I need briefing.

MR. OWENS:  All right.  So Your Honor, I'm going to address the public policy issue and maybe the part of the decision regarding some sort of -- like, the injunctive relief or some sort of provisional relief.  Some relief.

And Mr. Zorkin's going to address briefly the Court's analysis on the foreign main and foreign nonmain proceeding because there were some issues we wanted to point out that there might be, well, respectfully, disagreement on the analysis and wanted to clarify that and get the Court's views on that because the decision really didn't address -- it addressed some issues, but the terms of the analysis itself, I think Mr. Zorkin wanted to just go through and just make sure the Court is aware of the case law and how the courts look at this in the context of an individual, as opposed to a corporation.

THE COURT:  That's all fine.  Now, this is an actual ruling.  It's not a tentative ruling.  And so I will take this as at least a preliminary oral motion for reconsideration and/or clarification, and then we'll take it from there.

MR. OWENS:  Okay, Your Honor.  So with respect to --

MR. CARROLL:  Your Honor, if I may?

Case 2:23-bk-15574-NB   Doc 98   Filed 05/08/24   Entered 05/08/24 14:05:42   Desc
Main Document    Page 17 of 41
**Aleksandr Vitalievich Sabadash**

17

THE COURT:  Mr. Carroll.

MR. CARROLL:  Sorry to interrupt.  I do understand the argument that there was an order entered prior to Your Honor entering an order, and that's something the Court should address now.  But we're now clearly getting into something with a lot more detail.  Mr. Owens wants to argue part.  Mr. Zorkin wants to argue part.  I do think it is appropriate, Your Honor, at this point that this be done on papers rather than just here right now.  As Your Honor said, this is not a tentative ruling.  This was a detailed final ruling.

THE COURT:  I appreciate that.  And I'm also mindful of the fact that it's almost 4 and we haven't gotten through the 1 o'clock calendar yet.  But I think it would be helpful to me to hear the nature of the arguments, and then I can address whether it makes sense for me to set deadlines for written briefs, including whether that would be key to this continued hearing on March 12 or some other deadline.  So thank you, Mr. Carroll, but I'm going to go ahead and hear Mr. Owens, at least for those purposes.

One other thing that now that I think of it, if there is an unavailability for Mr. Zorkin for the 5th, are you contemplating that I would also be moving the existing hearing in the Golden Sphinx matter?  Is that a request?

MR. ZORKIN:  No, Your Honor.  I'm no longer counsel of record for Golden Sphinx.

**Aleksandr Vitalievich Sabadash**

18

THE COURT:  Okay.

MR. ZORKIN:  Thanks.

THE COURT:  All right.  Thank you.

Okay.  Mr. Owens.

MR. OWENS:  All right, Your Honor.  And I'll try to be brief and condense the argument, given the shortness of time.

So with respect to public policy, I think, Your Honor, your decision correctly highlighted the standard.  Right.  And the standard is essentially it's intended to be interpreted restrictively, and we all acknowledge that.  And it's invoked only in exceptional circumstances.  And it concerning matters of fundamental importance to the United States.  And what that means, the case law hasn't really caught up with the statue in terms of what that means in terms of fundamental importance of the United States.

We did provide examples of various cases, including the Markus case, which is a decision by Judge Klein (phonetic) out of the Southern District of New York, where he said that I'm going to allow for the sale of property in the United States.  I will permit the proceeds, to be used to pay a real estate broker, an agent, in the United States.  But given the war in Ukraine, I have frozen the money, and I'm not going to allow that money to leave the United States.

And so the Court stated that with respect to -- and when I say the Court, Your Honor has stated that this is

19

different because no money is leaving the United States.  And so essentially you don't have a transfer of funds.  I think what Your Honor's focused on is transferring funds out to a bank in Russia.  Right.

But we really don't know what they're trying to do, what is the purpose of the proceeding, why did they file the Chapter 15, and remember, Your Honor, they initially didn't file a Chapter 15.  It was initially a collection action in the United States in California.  And once the court determined that -- the state court determined that there was no basis to do that because they had to first seek Chapter 15 recognition, that's when they did so.

So it's not clear as to what they're actually trying to do.  Are they going to continue with the litigation in state court or what?  But Your Honor, I mean, we've identified that there is a California corporation that's AFB Trading One, Inc. And that's owned -- that owns Vyborg Limited, and then that owns VLK, which is this Russian entity, or owned VLK, because right now, the big dispute is that entity allegedly doesn't own VLK anymore.  VLK is the factory in Russia.

So with respect to the California entity, why are they pursuing this enforcement action in the United States?  What are they seeking to actually do?  And the concern that we raised, Your Honor, was one of a number.  But one of the concerns is that they may try to try to gain control, take

20

control, ownership of the shares of that entity, AFB Trading One, Inc., into Vyborg Limited to try to control litigation elsewhere.

But their order's broad, Your Honor.  And they basically say -- if you look at the proposed order, it says -- and that's docket number 2.  It's Exhibit A to the recognition application.

"The foreign representative shall be empowered to, among other things, manage, marshal, and liquidate the debtor's assets, subject to oversight by the Moscow court, and the foreign representative has the right and power to file and prosecute legal actions within the territory of the United States in connection with the marshalling and liquidating of the debtor's assets, including without limitation the right to file and prosecute actions against the debtor."

So it is broader.  And to the extent that there are assets that they're trying to execute on, especially the shares in the California entity, once those shares, if they're able to through a charging order or something obtain shares and try to control the entity, once it happens and they leave and go back to Russia to direct the litigation, it's actually possible that that's what happens.  And so then there's no real recourse, except for in Russia.  There's no real recourse for creditors, Mr. Itkin, for example, and we don't represent him.  But you

21

also have the interest of presumably Mrs. Sabadash, who has a community property interest in all assets of -- there's a divorce proceeding pending.

So couple things is, one, from a public policy perspective, right now, the way that -- what they're seeking for is essentially the right to go after assets.  And keep in mind that Mr. Gavva was put into this position by two banks.  These are Russian banks.  And essentially, by using the bankruptcy court to enable them to enforce and ultimately realize that nonassets in the United States, they would have the ability to -- essentially, it's a transfer of assets is what could happen if the recognition proceeding is granted without any limitations.

So we would argue that the public policy does come into play.  And keep in mind, the Russian war in Ukraine, this is dragging on and on.  In fact, President Biden just announced on Friday that they're going to impose brand new sanctions.  And there are -- there was a death of an opponent in Russia recently.

THE COURT:  So let me just stop you there.

MR. OWENS:  Yeah.

THE COURT:  I was just pulling up the decision, and I do have this language in there.  Mr. Gavva's counsel orally offered to limit any order recognizing the Russian bankruptcy proceeding to preclude any transfer of assets from the United

22

States absent further order of this bankruptcy court.  So that was an additional reason for me to determine that the public policy exception did not apply.  So it's my contemplation that any order implementing this memorandum decision would be taking up Mr. Gavva's counsel on that limitation.

So I don't know if that addresses your concern or not, and I'm quoting there from page 10, lines 8 to 10, for the record.

MR. OWENS:  Yes, Your Honor.  And I did review that. And I think the concern, Your Honor, is that if there is -- it's one thing to continue with litigation in state court, which is what they did.  State court said go to bankruptcy court.  They went to bankruptcy court.  Assuming that the Court doesn't change its ruling, presumably they go back to state court, and they continue.

The thing is, Your Honor, if they're able to effectuate through creditor remedies a transfer of the shares, for example, in AFB Trading, right, those shares now are held by a Russian administrator, a Russian agent of a Russian court, administrator.  That's effectively a transfer, right, because then they have control over that entity through the shares. For example, there could be resolutions or bylaws or whatever. They could remove management.  Whatever it is.  The concern is that if they go to that level, we're starting to really get to an area where it's not just simply pursuing litigation anymore,

Case 2:23-bk-15574-NB   Doc 98   Filed 05/08/24   Entered 05/08/24 14:05:42   Desc
Main Document    Page 23 of 41
**Aleksandr Vitalievich Sabadash**

23

but now it's sort of enforcing and trying to effectuate a transfer.

Now, maybe there's a workaround, Your Honor. Maybe the workaround is that the Court allows them to proceed with the litigation. Mr. Sabadash can respond to it. But that they have to go back into the bankruptcy court to do anything, to do anything other than simply liquidate the judgment or file the lawsuit or continue the lawsuit in state court. I don't know, Your Honor.

But the concern, again, is taking control of the shares, effectuating a transfer of the shares through charging order or otherwise, and then essentially making decisions on behalf of a California entity when you have other individuals, creditors involved. And we can get into the sort of Section 1522(a) I believe is the provision of the Code that gives the Court discretion to fashion relief. It's going to protect not just the foreign representative but also creditors and the debtor. Maybe that's a remedy there.

But that is the concern, Your Honor. Even with the Court's language, there's nothing that would prevent them, given that language, from taking over the shares of the entity. And that's an asset -- presumably, that's an asset of a nondebtor. Right. It's a nondebtor. There hasn't been any alter ego determination. There hasn't been any substantive consolidation or any of that. It's a nondebtor entity. And

Case 2:23-bk-15574-NB Doc 98 Filed 05/08/24 Entered 05/08/24 14:05:42 Desc
Main Document Page 24 of 41
**Aleksandr Vitalievich Sabadash**

24

what they want to do -- and one of the things they want to do, presumably, is to seek some sort of levy or try to gain control of that asset. Now, I guess --

THE COURT: Right. But --

MR. OWENS: -- the question for them is --

THE COURT: -- all of this --

MR. OWENS: Yeah.

THE COURT: -- the fictional entity, it's a legally recognized, but fictional entity is this holding company that holds a subsidiary in Russia that holds the factory in Russia. So it is true that a transfer of control of an entity incorporated in California to the control of someone in Russia might aid in the use of assets that are already in Russia by Russians.

But I think if the concern here is that the regime in Russia is going to take over assets and use it to fund the war in Ukraine or just to fund its economy that helps sustain the war in Ukraine, either way, I don't know that the transfer of the ownership of an entity that happens to be incorporated here instead of there but that ultimately deals with assets, tangible assets, that are located in Russia and that could be presumably ceased in any one of dozens of ways in Russia, I don't know that that is a sufficiently direct violation of public policy.

I could see how there might be some way in which it

25

marginally makes it somewhat easier to control those assets if we were to suppose that the entire Russian judicial system is geared towards doing that. And I'm not discounting. I saw the articles and materials that you provided that say, yeah, this is a classic way that has been used in Russia of taking over assets. But the California connection, it seems to me, is not a terribly strong aspect of that because the factory itself is in Russia.

MR. OWENS: And Mr. Zorkin will address that link in terms of the foreign main/nonmain analysis. I just, for purposes of the public policy order, just to close the loop on that --

THE COURT: Okay.

MR. OWENS: -- AFB Trading One, Inc., a California corporation, that owns Vyborg Limited, which is not a Russian entity but it's a Jersey corporation. And then that entity, apparently, has an ownership interest in the Russian entity called -- we're using the acronym VLK because I can't possibly pronounce --

THE COURT: Right.

MR. OWENS: -- the name. Keep in mind, Your Honor, that that lawsuit that was commenced by Vyborg, okay, with respect to the shares that were transferred to these third parties, the bank is involved in that. The banks that are involved in this proceeding that are seeking to put this

26

foreign representative into power for purposes of Chapter 15 as a foreign representative, they're involved in that litigation. And the concern, Your Honor, is again, these banks are financial institutions.  They're Russian financial institutions.  And if there is -- whether it aids in the war effort to try to gain control over a factory, okay, in Russia. That might be their entree into doing that.

Now, it's tenuous, but that works in -- yeah, that works both ways.  They're seeking to go after a California entity that if it's just a holding company, maybe holds some assets as well, they're going after that entity to try to get ultimately to the Russian factory, and they ultimately may seek to dismiss that lawsuit.  Your Honor, that's starting to use Chapter 15 in a way that I don't think is contemplated.  I think using Chapter 15, not to take control of litigation, but to maximize value for creditors in general to try to bring money in for creditors, that's really the purpose of Chapter 15, to aid in the recovery of creditors of a foreign bankruptcy.

And so this really seems like a litigation tactic, Your Honor, and that's the concern that we have -- one of the concerns that we have.

THE COURT:  All right.  Thank you.

MR. OWENS:  With respect to just one other issue, and then I'm going to turn it over real quickly.

27

There hasn't been any determination in terms of what is the value of the interests in AFB.  If there's eight million dollars that's owed to these two banks, for example, it's not clear whether it's worth anything or if it's worth a hundred million dollars or it's worth a billion dollars, there hasn't been that determination.

And so another concern, Your Honor, is that there are other parties that are involved.  There is, again, Mrs. Sabadash, who has a divorce proceeding that's pending.  Mr. Itkin, who is a creditor in the California case, presumably, a California creditor hasn't made an appearance at this case but is not a creditor in the Russian proceeding.  Right.  And you may have other involved folks.  And I understand the Court weighing -- the Court sort of said it's a wash, but ultimately, you have two creditors who are involved in the Russian proceeding, these two banks versus the one.  But there's also Mrs. Sabadash's will and how did the community property interests get determined or adjudicated.

And so it seems like there needs to be some valuation. You can't just seize all of the shares without determining what is the value of the shares.  You can't go after Microsoft if you have a claim against Microsoft and get a charging order and take all of the shares of Bill Gates and Microsoft without determining that, hey, those shares are worth a lot more than the underlying claim.  And so we're looking at the big picture

28

here, and there may be a return -- at the end of the rainbow, there might be a return, not just for creditors and the banks, but there actually may be money there for others, including Mr. Sabadash.

So Your Honor, there hasn't been any effort to really determine what the value is. And the concern again is if this court were to allow recognition, that that could somehow impact, again, the rights of third parties and the rights of Mr. Sabadash. And to allow that to be an issue for the Russian courts, there are other parties that need to be protected. And I think Your Honor has the discretion to do that under 1522.

THE COURT: I got to say, I'm smiling a little, not because of your argument but because I'm thinking every matter that I have tried to address this afternoon has taking about fifteen times as long as I had thought it might. And we're at 4:09, and I've got other parties waiting for me to finish the 1 o'clock calendar. Now --

MR. OWENS: I will stop speaking.

THE COURT: Right. So I think we've reached a point where I should probably follow what Mr. Carroll was essentially suggesting before, which is let's do this in writing, instead of trying to do it all orally. And let's talk about some dates and deadlines for doing that.

Now, if we do have this continued hearing on March 12, then ideally we could get some briefing done in time for things

29

to be heard at that time.  So Mr. Owens and Mr. Zorkin, I'm guessing you can get your papers ready because it seems as if you've already got some arguments formulated, by the 27th, a week from now.  And then I could hear from the other side on the 5th.  And then I could have a reply orally at the hearing.

So let me find out if that schedule is too aggressive or if that would -- if that would work for the parties.

So I'll start with you, Mr. Zorkin and Mr. Owens.

MR. ZORKIN:  So to clarify, the points that Mr. Owens and I were going to make orally today, we could put them in writing to be filed on the 27th.  But the Russian appeal ruling, that stays on the 5th?

THE COURT:  Correct.

MR. ZORKIN:  That works for me.

MR. OWENS:  Yes, Your Honor, that's fine.

THE COURT:  Okay.  And then with an opposition from your opponents on the 5th.  So it would be the 5th would be both the deadline for the briefs and declarations concerning the effect of the Russian decision and also any response to your motion for reconsideration of the memorandum decision. Okay.

MR. ZORKIN:  That works.

MR. OWENS:  Yeah.

THE COURT:  Mr. Stolyar.

MR. STOLYAR:  Yes.  Thank you, Your Honor.  What I

Case 2:23-bk-15574-NB Doc 98 Filed 05/08/24 Entered 05/08/24 14:05:42 Desc
Main Document Page 30 of 41
**Aleksandr Vitalievich Sabadash**

30

wanted to say is since the effect of the Russian decision is also effectively their motion for reconsideration, I think it would be appropriate for them to file everything on February 27th, including their papers on the Russian decision, and for us to then file our response to everything on March 5th because we're effectively responding to their arguments contending the alleged effect of the new Russian decision.

THE COURT: Mr. Zorkin. Mr. Owens.

MR. ZORKIN: I think we would have the same issue as Mr. Stolyar has with assuming that an expert would be available.

THE COURT: Yeah.

MR. ZORKIN: We potentially could --

THE COURT: Yeah.

MR. ZORKIN: -- but I would rather not commit on the record.

THE COURT: I don't see sufficient prejudice from having everybody do simultaneous briefs and declarations on the effect of the Russian decision on the 5th. So there's some appeal to your position, Mr. Stolyar, but I think, just dealing with the realities of scheduling, I'm going to stick with simultaneous briefs on that one and that one issue can be carved out.

Okay. I think that's probably everything for today. Thank you for keeping it interesting, and I will look forward

31

to seeing your papers and then seeing you all on the 5th.

MR. OWENS:  Thank you, Your Honor.

MR. ZORKIN:  Thank you, Your Honor.

THE COURT:  Oh, and I should mention --

MR. STOLYAR:  On the 12th.

UNIDENTIFIED SPEAKER:  Thank you, Your Honor.

MR. STOLYAR:  Your Honor, I think you meant on the 12th, right?

THE COURT:  On the 12th, yes.  Correct.

MR. STOLYAR:  Seeing us on the --

THE COURT:  On the 12th.  And I should mention, in connection with the matter that is on for the 5th, the Golden Sphinx issue, today is not a status conference on that, but I am aware that I took under submission doing a form of letter to the jersey court asking the Jersey court for some advice pursuant to the procedures in Chapter 15.  And my law clerk had drafted something a while ago, and then I have some both personal and business matters that took me away from that.  So I'm hopeful of getting an order out very soon on that that will give the parties an opportunity to weigh in on that, and that's probably one of the things I'll address on the 5th.

But I realize that Mr. Howard and Mr. Owens, you're not here to address that today.  I just wanted to give you that heads up that that should be coming out shortly.

MR. OWENS:  Thank you, Your Honor.  And with respect

32

to that case, I have not made an appearance in that case.

THE COURT:  Oh.

MR. ZORKIN:  Yeah.

THE COURT:  Sorry.

MR. OWENS:  In Golden Sphinx.

MR. ZORKIN:  It's just me, Your Honor.

THE COURT:  Okay.

MR. OWENS:  Yeah.

THE COURT:  Okay.  I'm mixing up who's present on which matter.

MR. ZORKIN:  Yeah.

THE COURT:  Okay.  Thank you.

MR. ZORKIN:  Thank you, Your Honor.

MR. OWENS:  Thank you, Your Honor.

(Whereupon these proceedings were concluded at 4:15 PM)

33

CERTIFICATION

I, River Wolfe, certify that the foregoing transcript is a true and accurate record of the proceedings.

_____

/s/ RIVER WOLFE, CDLT-265

eScribers

7227 N. 16th Street, Suite #207

Phoenix, AZ 85020

Date:   May 6, 2024

**[**

**[blah (1)**
8:6

**A**

**ability (2)**
5:2;21:11
**able (2)**
20:19;22:16
**absent (1)**
22:1
**acceptable (1)**
9:11
**accompanying (2)**
13:7;14:22
**acknowledge (1)**
18:10
**acronym (1)**
25:18
**act (2)**
8:17;9:13
**acted (1)**
6:23
**action (2)**
19:8,22
**actions (2)**
20:12,16
**actual (2)**
14:20;16:20
**actually (9)**
5:3;8:22;10:2,9;
11:5;19:13,23;20:22;
28:3
**Adam (1)**
3:20
**add (1)**
6:17
**addition (1)**
8:24
**additional (3)**
4:19;11:7;22:2
**address (16)**
4:2,9;5:16,21;7:15;
15:21;16:1,6,9,14;
17:5,14;25:9;28:14;
31:21,23
**addressed (1)**
16:15
**addresses (1)**
22:6
**addressing (1)**
7:19
**adjudicated (1)**
27:18
**administrator (2)**
22:19,20
**admonished (1)**
5:6
**adopt (1)**
11:4

**advice (1)**
31:15
**AFB (5)**
19:16;20:1;22:18;
25:14;27:2
**afternoon (7)**
3:8,11,13,17,19;
11:16;28:14
**again (7)**
4:7;9:13;23:10;
26:3;27:8;28:6,8
**against (2)**
20:16;27:22
**agent (4)**
4:13;5:2;18:21;
22:19
**aggressive (1)**
29:6
**ago (1)**
31:17
**agree (1)**
11:18
**Ah (1)**
15:23
**ahead (4)**
3:18;10:23;13:22;
17:18
**aid (2)**
24:13;26:18
**aids (1)**
26:5
**aim (1)**
4:2
**Alex (1)**
3:15
**Alexander (1)**
3:20
**alleged (1)**
30:7
**allegedly (1)**
19:19
**allow (5)**
8:18;18:19,23;28:7,
9
**allows (1)**
23:4
**almost (1)**
17:12
**alter (1)**
23:24
**alternative (1)**
6:12
**always (2)**
13:20;15:4
**ambiguous (1)**
8:18
**among (1)**
20:9
**analysis (4)**
16:10,13,15;25:10
**analyzed (2)**
4:9;8:4
**and/or (3)**

12:1;13:8;16:23
**Andy (1)**
3:20
**ANGELES (1)**
3:1
**announced (1)**
21:16
**anymore (2)**
19:20;22:25
**apparently (1)**
25:17
**appeal (9)**
4:17;5:25,25;6:3,5,
15;8:14;29:11;30:20
**appearance (2)**
27:11;32:1
**appearances (1)**
3:7
**appearing (1)**
3:9
**appellate (4)**
4:21,21,22;11:22
**application (1)**
20:7
**apply (1)**
22:3
**appreciate (2)**
6:18;17:11
**appropriate (8)**
9:2;10:3,5,11,23;
11:6;17:7;30:3
**arbitration (3)**
8:5,14;13:23
**area (1)**
22:25
**argue (3)**
17:6,7;21:14
**argument (4)**
13:13;17:3;18:6;
28:13
**arguments (3)**
17:14;29:3;30:6
**around (1)**
15:6
**articles (1)**
25:4
**aspect (1)**
25:7
**asset (3)**
23:22,22;24:3
**assets (16)**
4:14;5:2;20:10,15,
18;21:2,6,11,25;
24:13,16,20,21;25:1,
6;26:11
**assume (1)**
7:22
**Assuming (2)**
22:13;30:10
**attach (1)**
12:5
**August (2)**
12:14,15

**authenticate (1)**
12:2
**authenticating (2)**
7:9;13:5
**authority (1)**
6:4
**authorized (1)**
4:13
**AV (1)**
8:25
**available (2)**
11:9;30:11
**avenues (1)**
7:12
**aware (2)**
16:17;31:14
**away (1)**
31:18

**B**

**back (3)**
20:21;22:14;23:6
**Bank (3)**
8:12;19:4;25:24
**bankruptcy (7)**
21:9,24;22:1,12,13;
23:6;26:19
**banks (7)**
21:7,8;25:24;26:3;
27:3,16;28:2
**based (2)**
9:13;11:2
**basically (1)**
20:5
**basis (2)**
6:12;19:10
**bearing (2)**
4:10;10:9
**behalf (2)**
3:9;23:13
**believes (2)**
10:4,10
**bench (1)**
5:8
**Biden (1)**
21:16
**big (2)**
19:19;27:25
**Bill (1)**
27:23
**billion (1)**
27:5
**blah (1)**
8:6
**blah] (1)**
8:6
**both (7)**
7:15;10:25;11:11,
18;26:9;29:18;31:17
**brand (1)**
21:17
**brief (8)**

5:4;11:20,20,25;
13:8;15:13;16:2;18:6
**briefing (6)**
7:3,7;12:23;13:21;
16:4;28:25
**briefly (2)**
8:19;16:9
**briefs (6)**
14:18,22;17:16;
29:18;30:18,22
**bring (2)**
5:8;26:16
**broad (1)**
20:4
**broader (1)**
20:17
**broker (1)**
18:21
**build (1)**
14:6
**business (1)**
31:18
**bylaws (1)**
22:22

**C**

**calendar (2)**
17:13;28:17
**calendars (1)**
3:4
**CALIFORNIA (12)**
3:1;19:9,16,21;
20:19;23:13;24:12;
25:6,14;26:9;27:10,
11
**Call (2)**
3:3;15:7
**called (1)**
25:18
**came (1)**
10:7
**can (18)**
7:5,7,10;9:14;10:5,
10;11:18,19;12:5;
13:9,15,20;16:4;
17:14;23:5,14;29:2;
30:22
**cancel (1)**
9:6
**Caroll (2)**
9:20,24
**CARROLL (10)**
3:13,14;5:19,20;
10:1;16:25;17:1,2,18;
28:20
**carry (1)**
8:10
**carved (1)**
30:23
**case (8)**
8:6;16:17;18:13,17;
27:10,11;32:1,1

In Re: ALEKSANDR VITALIEVICH SABADASH

February 20, 2024

**cases (1)**
18:16
**caught (1)**
18:13
**causes (1)**
8:16
**ceased (1)**
24:22
**Certainly (1)**
5:22
**certified (1)**
7:24
**cetera (1)**
4:20
**challenge (2)**
6:14;8:3
**chambers (1)**
15:7
**chance (1)**
10:24
**change (1)**
22:14
**changes (1)**
14:24
**Chapter (8)**
19:7,8,11;26:1,14,
15,17;31:16
**charging (3)**
20:20;23:11;27:22
**check (1)**
7:18
**circulate (1)**
15:3
**circumstances (1)**
18:11
**claim (2)**
27:22,25
**clarification (10)**
4:24,25;6:1,8,11,
15;8:16,22;12:13;
16:23
**clarified (2)**
4:16,18
**clarify (4)**
7:13,23;16:13;29:9
**clarifying (2)**
4:16,17
**classic (1)**
25:5
**clear (4)**
6:3,7;19:13;27:4
**clearly (1)**
17:5
**clerk (1)**
31:16
**close (1)**
25:11
**cocounsel (1)**
3:10
**Code (1)**
23:15
**colleague (1)**
3:15

**collection (1)**
19:8
**coming (1)**
31:24
**commence (1)**
4:20
**commenced (1)**
25:22
**commit (1)**
30:15
**community (2)**
21:2;27:17
**company (2)**
24:9;26:10
**compare (1)**
12:8
**compensation (1)**
8:13
**competing (1)**
15:9
**concern (11)**
19:23;22:6,10,23;
23:10,19;24:15;26:3,
21;27:7;28:6
**concerned (2)**
14:13,15
**concerning (2)**
18:11;29:18
**concerns (2)**
19:25;26:22
**concluded (2)**
8:14;32:15
**condense (1)**
18:6
**confer (3)**
7:4;9:10;11:15
**conference (1)**
31:13
**confusing (1)**
13:20
**connection (3)**
20:13;25:6;31:12
**conscious (1)**
13:16
**considering (1)**
10:7
**consistent (1)**
8:1
**consolidation (1)**
23:25
**contain (1)**
8:15
**contemplated (1)**
26:14
**contemplating (1)**
17:22
**contemplation (1)**
22:3
**contending (1)**
30:6
**content (1)**
8:4
**context (1)**

16:18
**continuance (2)**
7:14;9:14
**continue (6)**
11:6;13:20;19:14;
22:11,15;23:8
**continued (4)**
12:14;15:12;17:16;
28:24
**control (12)**
19:25;20:1,2,21;
22:21;23:10;24:2,11,
12;25:1;26:6,15
**copies (2)**
5:7;6:18
**copy (5)**
5:5;7:8,21;11:16;
13:6
**corporation (4)**
16:19;19:16;25:15,
16
**correctly (1)**
18:8
**costs (1)**
5:4
**counsel (7)**
3:14;5:24;6:3;
11:16;17:24;21:23;
22:5
**countries (1)**
9:3
**couple (3)**
4:9;11:9;21:4
**course (4)**
7:4,24;8:2;14:19
**Court (101)**
3:3,4,12,16,18,22;
4:22,22;5:6,9,11,18,
22,25,25;6:3,5,15,22;
7:22;8:5,14;9:12,20,
22;10:12,16,19;
11:22;12:16,19,21,25;
13:2,13,15,25;14:2,5,
17;15:16,18,23;16:1,
3,17,20;17:1,4,11;
18:1,3,24,25;19:9,10,
15;20:11;21:9,20,22;
22:1,11,12,13,13,13,
15,19;23:4,6,8,16;
24:4,6,8;25:13,20;
26:23;27:13,14;28:7,
12,19;29:13,16,24;
30:8,12,14,17;31:4,9,
11,15,15;32:2,4,7,9,
12
**courts (5)**
7:13;10:25;11:3;
16:17;28:10
**Court's (5)**
4:10;14:20;16:9,13;
23:20
**creditor (5)**
8:12;22:17;27:10,

11,12
**creditors (8)**
20:24;23:14,17;
26:16,17,18;27:15;
28:2
**current (1)**
9:13

**D**

**date (1)**
12:17
**dated (1)**
8:5
**dates (4)**
7:17;11:8;12:10;
28:22
**day (1)**
13:3
**deadline (9)**
7:14;11:10;13:3;
14:6,12,18;15:12;
17:17;29:18
**deadlines (6)**
7:17;9:17;11:7;
12:10;17:15;28:23
**deal (1)**
10:6
**dealing (1)**
30:20
**deals (1)**
24:20
**death (1)**
21:18
**debtor (2)**
20:16;23:18
**debtor's (4)**
8:11,13;20:10,14
**December (2)**
4:12,18
**decide (2)**
7:10,11
**decision (25)**
3:25;4:2,4;7:2;9:6;
10:8,8,10,22,23;
11:22;14:21;15:24;
16:7,14;18:8,17;
21:22;22:4;29:19,20;
30:1,4,7,19
**decisions (1)**
23:12
**declaration (8)**
7:9,14;11:20;12:1,
2;13:4,7;15:12
**declarations (5)**
14:14,18,22;29:18;
30:18
**defer (1)**
11:4
**detail (2)**
4:9;17:6
**detailed (1)**
17:10

**determination (3)**
23:24;27:1,6
**determine (3)**
4:14;22:2;28:6
**determined (3)**
19:9,10;27:18
**determining (3)**
4:23;27:20,24
**different (6)**
11:4,19;12:4,9;
13:17;19:1
**differs (1)**
12:6
**difficulties (1)**
8:16
**direct (4)**
7:4;11:15;20:22;
24:23
**directing (1)**
11:14
**disagree (1)**
7:16
**disagreement (1)**
16:12
**discounting (1)**
25:3
**discretion (2)**
23:16;28:11
**discussed (1)**
5:4
**dismiss (1)**
26:13
**dispute (1)**
19:19
**District (1)**
18:18
**divorce (2)**
21:3;27:9
**Divrichi (1)**
8:12
**Dmitry (1)**
8:8
**docket (1)**
20:6
**dollars (3)**
27:3,5,5
**done (3)**
13:5;17:8;28:25
**dozens (1)**
24:22
**drafted (1)**
31:17
**dragging (1)**
21:16
**Dupak (1)**
8:8

**E**

**earlier (1)**
5:6
**easier (1)**
25:1

**easy (1)**
12:6
**economy (1)**
24:17
**effect (6)**
9:7;15:13;29:19;
30:1,7,19
**effective (1)**
10:24
**effectively (4)**
6:5;22:20;30:2,6
**effectuate (2)**
22:17;23:1
**effectuating (1)**
23:11
**effort (2)**
26:6;28:5
**ego (1)**
23:24
**eight (1)**
27:2
**either (5)**
7:7;10:21;11:20;
12:3;24:18
**else (4)**
3:23;7:18;9:16;
14:24
**elsewhere (1)**
20:3
**email (2)**
9:9;11:17
**empowered (1)**
20:8
**enable (1)**
21:9
**end (1)**
28:1
**enforce (1)**
21:9
**enforcement (1)**
19:22
**enforcing (1)**
23:1
**English (1)**
6:19
**enough (1)**
14:15
**ensure (1)**
8:9
**enter (1)**
10:3
**entered (1)**
17:3
**entering (1)**
17:4
**entire (1)**
25:2
**entity (19)**
19:18,19,21;20:1,
19,21;22:21;23:13,21,
25;24:8,9,11,19;
25:16,16,17;26:10,11
**entree (1)**

26:7
**entrepreneur (1)**
8:8
**envisioning (1)**
15:11
**especially (1)**
20:18
**essentially (11)**
4:13,17,23,25;18:9;
19:2;21:6,8,11;23:12;
28:20
**estate (1)**
18:21
**et (1)**
4:20
**Even (1)**
23:19
**everybody (2)**
3:25;30:18
**example (4)**
20:25;22:18,22;
27:3
**examples (1)**
18:16
**except (1)**
20:24
**exception (1)**
22:3
**exceptional (1)**
18:11
**exchange (1)**
7:5
**excluding (1)**
14:19
**execute (1)**
20:18
**executing (2)**
8:17,23
**exercise (1)**
8:9
**Exhibit (1)**
20:6
**existing (1)**
17:22
**expense (2)**
8:11,13
**expert (2)**
13:7;30:10
**experts (3)**
11:21,21;14:14
**explaining (1)**
11:21
**extent (3)**
6:17;10:4;20:17

**F**

**fact (3)**
13:16;17:12;21:16
**factory (5)**
19:20;24:10;25:7;
26:6,12
**fashion (1)**

23:16
**faster (1)**
13:18
**FEBRUARY (4)**
3:1;11:11;14:7;
30:3
**Federation (1)**
9:1
**fictional (2)**
24:8,9
**fifteen (1)**
28:15
**fifty (2)**
14:21,21
**figure (1)**
9:14
**file (13)**
5:6;7:14;11:12,12,
13,20;19:6,8;20:12,
15;23:7;30:3,5
**filed (3)**
5:6;11:7;29:11
**filing (1)**
6:23
**final (1)**
17:10
**financial (4)**
8:10,21;26:4,4
**find (3)**
6:3,12;29:6
**fine (2)**
16:20;29:15
**finish (1)**
28:16
**first (9)**
5:12,13,17;7:20;
9:24,25;12:24;15:21;
19:11
**five (5)**
12:7;13:9;14:19,22;
15:13
**five-page (2)**
11:25;12:1
**flyspecking (1)**
12:8
**focused (1)**
19:3
**folks (1)**
27:13
**follow (2)**
4:4;28:20
**following (1)**
13:24
**foreign (12)**
3:14,21;9:3;16:10,
10;20:8,11;23:17;
25:10;26:1,2,18
**form (2)**
15:9;31:14
**formulated (1)**
29:3
**forward (3)**
10:3,10;30:25

**found (3)**
5:25;6:5,6
**Fox (1)**
3:9
**Friday (1)**
21:17
**front (1)**
4:10
**frozen (1)**
18:22
**fund (2)**
24:16,17
**fundamental (2)**
18:12,14
**funds (2)**
19:2,3
**further (4)**
6:17;7:13;8:13;
22:1

**G**

**gain (3)**
19:25;24:2;26:6
**Gates (1)**
27:23
**gave (4)**
4:19,19;6:10,13
**Gavva (8)**
4:12,19,24;6:4,10,
13;11:3;21:7
**Gavva's (2)**
21:23;22:5
**geared (1)**
25:3
**general (1)**
26:16
**given (4)**
14:13;18:6,21;
23:21
**gives (1)**
23:15
**goes (1)**
9:5
**Golden (6)**
3:21;12:18;17:23,
25;31:12;32:5
**Good (5)**
3:8,11,13,17,19
**granted (1)**
21:12
**great (2)**
10:6;13:24
**grounds (1)**
10:4
**guess (2)**
15:1;24:3
**guessing (1)**
29:2

**H**

**hand (3)**

6:18;9:9,22
**happen (2)**
6:25;21:12
**happens (3)**
20:21,23;24:19
**happy (3)**
7:11;9:8,24
**hastily (1)**
6:23
**heads (1)**
31:24
**hear (6)**
5:11,12;10:24;
17:14,18;29:4
**heard (1)**
29:1
**hearing (11)**
4:2;12:14,18;13:12,
13;14:8,11;17:17,22;
28:24;29:5
**hearings (1)**
15:11
**held (1)**
22:18
**helpful (1)**
17:13
**helps (1)**
24:17
**hey (1)**
27:24
**highlight (1)**
12:7
**highlighted (1)**
18:8
**Hold (3)**
5:9;9:8;15:8
**holding (2)**
24:9;26:10
**holds (3)**
24:10,10;26:10
**Honor (67)**
3:8,13,19;4:6,8;5:5,
20,23;6:6,9,11,18,20;
7:21;8:19;9:9,21;
10:1,2,6,14,18;12:13;
13:10;14:1,4,10;
15:15,17,19;16:5,24,
25;17:3,7,9,24;18:5,7,
25;19:7,15,24;20:4;
22:9,10,16;23:3,9,19;
25:21;26:3,13,21;
27:7;28:5,11;29:15,
25;31:2,3,6,7,25;32:6,
13,14
**Honor's (2)**
6:16;19:3
**hopeful (1)**
31:19
**HOWARD (6)**
3:17,19,20;10:17,
18;31:22
**hundred (1)**
27:4

In Re: ALEKSANDR VITALIEVICH SABADASH

February 20, 2024

**I**

**ideally (1)**
28:25
**identified (1)**
19:15
**imagine (1)**
11:14
**immediately (1)**
15:7
**impact (1)**
28:8
**implementing (3)**
7:2;10:22;22:4
**importance (2)**
18:12,14
**impose (2)**
9:2;21:17
**inaccurate (1)**
6:21
**Inc (3)**
19:16;20:2;25:14
**inclined (1)**
13:18
**including (7)**
4:19;5:3;17:16;
18:16;20:15;28:3;
30:4
**incorporated (2)**
24:12,19
**indicated (1)**
4:1
**indicating (1)**
8:24
**indiscernible (1)**
14:2
**individual (2)**
8:8;16:18
**individuals (1)**
23:13
**initial (2)**
14:7,12
**initially (3)**
16:3;19:7,8
**initiating (1)**
9:2
**injunctive (1)**
16:7
**Instead (3)**
6:5;24:20;28:21
**institutions (2)**
26:4,5
**intended (1)**
18:9
**intentionally (1)**
11:23
**interest (3)**
21:1,2;25:17
**interesting (1)**
30:25
**interests (2)**
27:2,18

**interlocking (1)**
13:16
**interpret (1)**
11:22
**interpretation (4)**
7:10;8:18;12:1,1
**interpretations (1)**
11:19
**interpreted (1)**
18:9
**interpreting (1)**
10:20
**interrupt (1)**
17:2
**into (8)**
17:5;20:2;21:7,15;
23:6,14;26:1,7
**invalid (1)**
4:24
**investigate (1)**
5:2
**invoked (1)**
18:10
**involved (8)**
8:24;23:14;25:24,
25;26:2;27:8,13,15
**involvement (1)**
8:7
**irrelevant (1)**
6:16
**issuance (1)**
10:21
**issue (10)**
4:11;5:14,17,21;
16:6;26:24;28:9;30:9,
22;31:13
**issued (3)**
4:1,22;7:1
**issues (10)**
4:3,9;5:15,17;10:7;
15:20,20,22;16:11,15
**issuing (1)**
15:8
**Itkin (2)**
20:25;27:10

**J**

**Jersey (3)**
25:16;31:15,15
**JSC (1)**
8:12
**Judge (1)**
18:17
**judgment (1)**
23:7
**judicial (2)**
8:17;25:2
**justification (1)**
8:7

**K**

**keep (3)**
21:6,15;25:21
**keeping (2)**
11:23;30:25
**Keith (2)**
3:8;4:7
**key (1)**
17:16
**Klein (1)**
18:17

**L**

**lacked (1)**
6:4
**language (3)**
21:23;23:20,21
**latter (1)**
13:9
**law (3)**
16:17;18:13;31:16
**lawsuit (4)**
23:8,8;25:22;26:13
**least (4)**
10:21;14:12;16:22;
17:18
**leave (2)**
18:23;20:21
**leaving (1)**
19:1
**legal (5)**
9:2;11:21,21;13:7;
20:12
**legally (1)**
24:8
**letter (1)**
31:14
**level (1)**
22:24
**levy (1)**
24:2
**limit (1)**
21:24
**limitation (2)**
20:15;22:5
**limitations (1)**
21:13
**Limited (4)**
3:21;19:17;20:2;
25:15
**line-by-line (1)**
12:9
**lines (1)**
22:7
**link (1)**
25:9
**liquidate (2)**
20:9;23:7
**liquidating (1)**
20:14
**litigation (10)**
4:20;19:14;20:2,22;
22:11,25;23:5;26:2,

15,20
**little (2)**
6:24;28:12
**located (2)**
4:14;24:21
**lodge (3)**
15:3,4,9
**lodged (2)**
15:5,7
**Loeb (2)**
3:14,14
**long (3)**
13:9,18;28:15
**longer (4)**
13:15;14:19;15:13;
17:24
**look (3)**
16:17;20:5;30:25
**looked (1)**
4:8
**looking (2)**
10:6;27:25
**looks (1)**
13:19
**loop (1)**
25:11
**LOS (1)**
3:1
**lot (2)**
17:6;27:24

**M**

**main (1)**
16:10
**main/nonmain (1)**
25:10
**makes (4)**
7:3;9:12;17:15;
25:1
**making (1)**
23:12
**manage (1)**
20:9
**management (1)**
22:23
**manager (2)**
8:10,21
**many (1)**
13:17
**March (14)**
11:9;12:15,16;
13:23;14:7,11,12,12,
17;15:12,12;17:17;
28:24;30:5
**marginally (1)**
25:1
**Markus (1)**
18:17
**marshal (1)**
20:9
**marshalling (1)**
20:14

**materials (1)**
25:4
**matter (8)**
3:5;4:11;11:5,6;
17:23;28:13;31:12;
32:10
**matters (3)**
13:16;18:11;31:18
**maximize (1)**
26:16
**maximum (1)**
14:22
**may (9)**
4:10;6:11,14;16:25;
19:25;26:12;27:13;
28:1,3
**maybe (8)**
6:24;7:8,13;16:6;
23:3,3,18;26:10
**mean (4)**
7:11;11:1;13:15;
19:15
**means (3)**
13:4;18:13,14
**meant (1)**
31:7
**measures (1)**
8:10
**meet (3)**
7:4;9:10;11:15
**memorandum (7)**
3:25;4:2,4;7:1;
10:22;22:4;29:20
**memorialize (1)**
15:2
**mention (2)**
31:4,11
**mentioned (1)**
5:13
**Microsoft (3)**
27:21,22,23
**might (8)**
6:22;11:24;16:12;
24:13,25;26:7;28:2,
15
**million (2)**
27:2,5
**mind (5)**
10:14;11:24;21:7,
15;25:21
**mindful (1)**
17:11
**misrepresented (1)**
5:24
**mixing (1)**
32:9
**moment (1)**
5:9
**money (5)**
18:22,23;19:1;
26:17;28:3
**more (3)**
13:20;17:6;27:24

**morning (1)**
4:1
**Moscow (2)**
8:5;20:10
**most (2)**
11:6,25
**motion (6)**
10:5,11,21;16:22;
29:20;30:2
**move (3)**
10:3,10;13:18
**moving (1)**
17:22
**Mrs (3)**
21:1;27:8,17

**N**

**name (1)**
25:21
**nature (1)**
17:14
**necessary (1)**
6:12
**need (7)**
4:3;6:2,7;13:21;
14:13;16:4;28:10
**needed (1)**
12:2
**needs (1)**
27:19
**New (3)**
18:18;21:17;30:7
**nonassets (1)**
21:10
**nondebtor (3)**
23:23,23,25
**nonmain (1)**
16:10
**number (3)**
8:6;19:24;20:6

**O**

**objection (1)**
12:10
**objections (1)**
6:21
**obtain (1)**
20:20
**obviously (2)**
10:6;11:2
**o'clock (3)**
3:5;17:13;28:17
**October (5)**
4:15;6:6,10,13;8:5
**off (2)**
9:8;15:8
**offered (1)**
21:24
**once (3)**
19:9;20:19,21
**one (25)**

7:23;11:11,20,23;
12:9;13:8,8;14:15;
15:21;17:20;19:16,
24,24;20:2;21:4;
22:11;24:1,22;25:14;
26:21,24;27:16;
30:22,22;31:21
**only (4)**
5:1;13:9;15:1;
18:11
**oOo- (1)**
3:2
**opponent (1)**
21:18
**opponents (1)**
29:17
**opportunity (7)**
6:20;7:15,25;8:3;
15:9;16:1;31:20
**opposed (1)**
16:18
**opposing (1)**
11:16
**opposition (1)**
29:16
**oral (2)**
10:20;16:22
**orally (5)**
14:8;21:23;28:22;
29:5,10
**order (43)**
3:3;4:13,15,16,17,
18,23,24,25;5:1,5,8;
6:1,3,6,9,10,11,13,15,
19;7:2,22;8:9;10:3,
22;15:2,3,4,7,10,11;
17:3,4;20:5,20;21:24;
22:1,4;23:12;25:11;
27:22;31:19
**orders (1)**
15:5
**order's (1)**
20:4
**original (1)**
13:6
**others (1)**
28:3
**otherwise (2)**
3:24;23:12
**out (10)**
6:9;8:10;9:14;
16:11;18:18;19:3;
29:6;30:23;31:19,24
**outside (1)**
9:1
**over (6)**
22:21;23:21;24:16;
25:5;26:6,25
**overseas (2)**
4:14;5:3
**oversight (1)**
20:10
**owed (1)**

27:3
**Owens (53)**
3:8,8;4:5,6,7;5:10,
15,16;7:20,21;10:8;
11:15;12:12,13,17,20,
23;13:1,10,14,22;
14:1;15:2,15,19,24;
16:5,24;17:6,18;18:4,
5;21:21;22:9;24:5,7;
25:9,14,21;26:24;
28:18;29:1,8,9,15,23;
30:8;31:2,22,25;32:5,
8,14
**Owens' (1)**
10:20
**own (1)**
19:19
**owned (2)**
19:17,18
**ownership (3)**
20:1;24:19;25:17
**owns (3)**
19:17,18;25:15

**P**

**page (1)**
22:7
**pages (6)**
13:9;14:19,21,21,
23;15:13
**papers (10)**
6:18;11:7,12,13,24;
14:7;17:8;29:2;30:4;
31:1
**part (3)**
16:6;17:6,7
**particularly (1)**
14:11
**parties (14)**
6:23;7:4;9:14;
11:11,14;12:4;14:5;
25:24;27:8;28:8,10,
16;29:7;31:20
**partner (2)**
5:21;9:22
**pay (2)**
5:3;18:20
**penalty (1)**
9:2
**pending (2)**
21:3;27:9
**period (1)**
13:15
**permit (1)**
18:20
**personal (1)**
31:18
**perspective (1)**
21:5
**persuaded (1)**
7:11
**petition (1)**

8:21
**phonetic (3)**
8:9,12;18:17
**picture (1)**
27:25
**play (1)**
21:15
**pleadings (1)**
5:7
**please (2)**
5:21;12:7
**PM (3)**
3:1;12:16;32:15
**point (3)**
16:11;17:8;28:19
**pointed (1)**
6:9
**points (1)**
29:9
**policy (7)**
16:6;18:7;21:4,14;
22:3;24:24;25:11
**position (2)**
21:7;30:20
**possibilities (1)**
11:25
**possible (1)**
20:22
**possibly (1)**
25:18
**potentially (2)**
14:13;30:13
**power (2)**
20:12;26:1
**powers (1)**
8:10
**preclude (1)**
21:25
**prejudice (1)**
30:17
**preliminary (2)**
4:11;16:22
**prepare (1)**
15:3
**present (3)**
9:15;10:11;32:9
**President (1)**
21:16
**presumably (6)**
21:1;22:14;23:22;
24:2,22;27:10
**presume (1)**
3:25
**pretty (2)**
15:6,14
**prevent (1)**
23:20
**prior (1)**
17:3
**probably (4)**
7:3;28:20;30:24;
31:21
**problem (1)**

15:6
**problems (1)**
7:6
**procedural (1)**
4:3
**procedure (2)**
8:23;14:25
**procedures (2)**
12:11;31:16
**proceed (4)**
5:15,17;6:4;23:4
**proceeding (9)**
16:10;19:6;21:3,12,
25;25:25;27:9,12,16
**proceedings (4)**
7:10;9:3;13:17;
32:15
**proceeds (1)**
18:20
**prohibiting (1)**
6:23
**pronounce (1)**
25:19
**property (6)**
8:11,14,25;18:19;
21:2;27:17
**proposed (4)**
15:3,4,9;20:5
**proposing (1)**
12:14
**prosecute (2)**
20:12,16
**protect (1)**
23:16
**protected (1)**
28:10
**provide (2)**
6:20;18:16
**provided (1)**
25:4
**provision (1)**
23:15
**provisional (1)**
16:8
**public (7)**
16:6;18:7;21:4,14;
22:2;24:24;25:11
**pulling (1)**
21:22
**purportedly (1)**
4:18
**purpose (2)**
19:6;26:17
**purposes (3)**
17:19;25:11;26:1
**pursuant (1)**
31:16
**pursuing (3)**
7:12;19:22;22:25
**push (1)**
14:12
**put (3)**
21:7;25:25;29:10

In Re: ALEKSANDR VITALIEVICH SABADASH

February 20, 2024

## Q

**quickly (2)**
15:6;26:25
**quoting (1)**
22:7

## R

**rainbow (1)**
28:1
**raise (1)**
16:3
**raised (4)**
4:11;9:23;15:20;
19:24
**rather (2)**
17:8;30:15
**re (1)**
3:5
**reached (1)**
28:19
**read (2)**
8:2;10:14
**ready (1)**
29:2
**real (4)**
18:20;20:23,24;
26:25
**realities (1)**
30:21
**realize (2)**
21:10;31:22
**really (8)**
13:19;16:14;18:13;
19:5;22:24;26:17,20;
28:5
**reason (1)**
22:2
**recently (1)**
21:19
**recognition (4)**
19:11;20:6;21:12;
28:7
**recognized (2)**
8:7;24:9
**recognizing (1)**
21:24
**reconsider (2)**
10:5,21
**reconsideration (3)**
16:22;29:20;30:2
**record (5)**
4:7;9:13;17:25;
22:8;30:16
**recourse (2)**
20:23,24
**recovery (1)**
26:18
**referring (1)**
10:9
**regarding (3)**

11:12;15:13;16:7
**regime (1)**
24:15
**region (1)**
8:5
**register (1)**
6:20
**related (1)**
6:14
**relief (4)**
16:7,8,8;23:16
**remedies (1)**
22:17
**remedy (1)**
23:18
**remember (1)**
19:7
**remove (1)**
22:23
**reply (3)**
13:11;14:8;29:5
**represent (1)**
20:25
**representative (6)**
3:15;20:8,11;23:17;
26:1,2
**representatives (1)**
3:21
**request (2)**
14:10;17:23
**requested (1)**
14:24
**resolutions (1)**
22:22
**resolve (1)**
13:11
**respect (10)**
5:2;15:19,24;16:24;
18:7,24;19:21;25:23;
26:24;31:25
**respectfully (1)**
16:12
**respond (2)**
14:6;23:5
**responding (1)**
30:6
**response (3)**
14:7;29:19;30:5
**restrictively (1)**
18:10
**retain (2)**
4:13;5:2
**return (2)**
28:1,2
**reverse (2)**
6:1;9:6
**reversed (1)**
4:23
**review (5)**
6:19;7:23;8:1;11:2;
22:9
**reviewing (1)**
8:2

**right (25)**
6:22;8:25;9:1;
12:19,22;16:5;17:9;
18:3,5,8,19:4,19;
20:11,15;21:5,6;
22:18,20;23:23;24:4;
25:20;26:23;27:12;
28:19;31:8
**rights (5)**
4:19,19,20;28:8,8
**Ronald (1)**
3:19
**Rothschild (1)**
3:9
**ruling (22)**
4:8,10,21,22;5:25;
6:7,15,16;8:4,22,23;
10:24,25;11:13;
14:20;15:14;16:21,
21;17:9,10;22:14;
29:12
**Russia (17)**
4:22;6:5;19:4,20;
20:22,24;21:18;
24:10,10,12,13,16,21,
22;25:5,8;26:6
**Russian (32)**
7:10,13;9:1;10:25;
11:3,21,22;13:6;
14:14,20;15:14;
19:18;21:8,15,24;
22:19,19,19;25:2,15,
17;26:4,12;27:12,15;
28:9;29:11,19;30:1,4,
7,19
**Russians (1)**
24:14

## S

**Sabadash (10)**
3:5,9;4:7;8:25;
10:4;21:1;23:5;27:9;
28:4,9
**Sabadash's (1)**
27:17
**sale (1)**
18:19
**same (7)**
9:6;12:3,17,18;
13:2,5;30:9
**sanctions (1)**
21:17
**saw (1)**
25:3
**schedule (2)**
7:3;29:6
**scheduling (1)**
30:21
**Schuyler (1)**
3:14
**scope (1)**
5:24

**search (2)**
8:11,25
**Section (1)**
23:14
**seeing (3)**
31:1,1,10
**seek (3)**
19:11;24:2;26:12
**seeking (4)**
19:23;21:5;25:25;
26:9
**seems (5)**
11:2;25:6;26:20;
27:19;29:2
**Segal (2)**
3:20,20
**seize (1)**
27:20
**send (1)**
11:15
**sense (3)**
7:3;9:12;17:15
**set (5)**
7:3;11:6,10;13:15;
17:15
**shall (1)**
20:8
**shares (15)**
20:1,18,19,20;
22:17,18,21;23:11,11,
21;25:23;27:20,21,23,
24
**short (3)**
7:13;9:13;15:8
**shortly (1)**
31:24
**shortness (1)**
18:6
**side (6)**
5:11,14;7:25;9:10;
12:3;29:4
**sides (3)**
7:15;10:25;11:18
**simply (2)**
22:25;23:7
**Simultaneous (3)**
13:2;30:18,22
**smiling (1)**
28:12
**somebody (1)**
11:21
**somehow (1)**
28:7
**someone (1)**
24:12
**somewhat (1)**
25:1
**somewhere (1)**
11:10
**soon (1)**
31:19
**sorry (4)**
12:15;15:25;17:2;

32:4
**sort (8)**
4:8;16:2,7,8;23:1,
14;24:2;27:14
**sounds (2)**
6:22;12:19
**Southern (1)**
18:18
**SPEAKER (1)**
31:6
**speaking (1)**
28:18
**specialist (1)**
8:24
**Sphinx (6)**
3:21;12:18;17:23,
25;31:13;32:5
**staff (2)**
12:8;15:5
**standard (2)**
18:8,9
**standing (7)**
4:11,12;6:10,12,14;
11:3;15:21
**start (5)**
3:6,6;4:5;9:16;29:8
**starting (2)**
22:24;26:13
**state (6)**
19:10,14;22:11,12,
14;23:8
**stated (2)**
18:24,25
**statements (1)**
10:20
**States (12)**
5:3;18:12,15,20,21,
23;19:1,9,22;20:13;
21:10;22:1
**statue (1)**
18:13
**status (1)**
31:13
**stay (1)**
10:21
**stays (1)**
29:12
**stick (1)**
30:21
**Stolyar (21)**
3:15;5:22,23;8:1;
9:18,19,20,21,25;
10:13,14;14:4,9,10;
29:24,25;30:10,20;
31:5,7,10
**stop (2)**
21:20;28:18
**straightforward (1)**
15:14
**strong (1)**
25:7
**subject (1)**
20:10

In Re: ALEKSANDR VITALIEVICH SABADASH

February 20, 2024

**submission (4)**
7:8;12:24;13:11;
31:14
**submit (1)**
7:23
**submitting (2)**
8:21;9:8
**subsequent (2)**
4:15;5:7
**subsidiary (1)**
24:10
**substantive (1)**
23:24
**sufficient (2)**
14:16;30:17
**sufficiently (2)**
6:7;24:23
**suggested (1)**
6:4
**suggesting (1)**
28:21
**suitable (1)**
14:17
**suppose (1)**
25:2
**sure (3)**
14:14;15:25;16:16
**sustain (1)**
24:17
**system (1)**
25:2

**T**

**tactic (1)**
26:20
**talk (4)**
7:17;9:16;11:8;
28:22
**talking (1)**
15:5
**tangible (1)**
24:21
**teed (1)**
6:24
**tend (1)**
15:5
**tentative (2)**
16:21;17:9
**tentatively (1)**
14:2
**tenuous (1)**
26:8
**terms (6)**
6:25;16:15;18:14,
14;25:10;27:1
**terribly (1)**
25:7
**territory (1)**
20:13
**Thanks (1)**
18:2
**thinking (1)**

28:13
**third (2)**
25:23;28:8
**thought (2)**
15:23;28:15
**times (1)**
28:15
**today (5)**
7:19;29:10;30:24;
31:13,23
**Togut (1)**
3:20
**tonight (1)**
11:17
**took (2)**
31:14,18
**towards (1)**
25:3
**Trading (4)**
19:16;20:1;22:18;
25:14
**transfer (9)**
19:2;21:11,25;
22:17,20;23:2,11;
24:11,18
**transferred (1)**
25:23
**transferring (1)**
19:3
**translation (17)**
6:19,21;7:6,8,15,16,
22,24;9:10;11:18;
12:3,4,6;13:4,5,6;
14:20
**translations (2)**
7:5;12:4
**tried (1)**
28:14
**true (1)**
24:11
**try (10)**
9:12;18:5;19:25,25;
20:2,20;24:2;26:6,11,
16
**trying (5)**
19:5,13;20:18;23:1;
28:22
**TUESDAY (1)**
3:1
**turn (3)**
5:14;15:5;26:25
**two (5)**
13:9;21:7;27:3,15,
16

**U**

**Ukraine (4)**
18:22;21:15;24:17,
18
**ultimate (1)**
6:15
**ultimately (6)**

9:5;21:9;24:20;
26:12,12;27:14
**unacceptable (1)**
9:4
**unambiguous (2)**
5:1,1
**unavailability (1)**
17:21
**uncertainties (1)**
8:15
**under (3)**
7:8;28:11;31:14
**underlying (4)**
4:12;6:2;10:9;
27:25
**UNIDENTIFIED (1)**
31:6
**UNISON (1)**
15:17
**United (12)**
5:3;18:12,15,19,21,
23;19:1,9,22;20:13;
21:10,25
**universe (1)**
11:24
**unless (2)**
3:24;16:1
**up (9)**
4:4,10;6:24;13:9;
18:13;21:22;22:5;
31:24;32:9
**use (3)**
24:13,16;26:13
**used (2)**
18:20;25:5
**using (3)**
21:8;25:18;26:15

**V**

**vacate (1)**
9:5
**vacated (1)**
4:23
**vague (1)**
11:23
**valuation (1)**
27:19
**value (4)**
26:16;27:2,21;28:6
**various (1)**
18:16
**versus (1)**
27:16
**view (1)**
11:4
**views (1)**
16:13
**violation (1)**
24:23
**Vladimirovich (1)**
8:8
**VLK (5)**

19:18,18,20,20;
25:18
**Vyborg (4)**
19:17;20:2;25:15,
22

**W**

**waiting (1)**
28:16
**wants (2)**
17:6,7
**war (5)**
18:22;21:15;24:16,
18;26:5
**warranted (1)**
6:2
**wash (1)**
27:14
**way (7)**
10:3;11:23;21:5;
24:18,25;25:5;26:14
**ways (2)**
24:22;26:9
**week (4)**
11:11;13:24;14:15;
29:4
**weeks (1)**
11:9
**weigh (1)**
31:20
**weighing (1)**
27:14
**welcome (1)**
15:18
**well-reasoned (1)**
10:7
**what's (1)**
12:9
**Whereupon (1)**
32:15
**who's (1)**
32:9
**within (1)**
20:12
**without (4)**
20:15;21:13;27:20,
23
**Wood (1)**
3:21
**words (2)**
12:7,7
**work (1)**
29:7
**workaround (2)**
23:3,4
**works (6)**
14:1,4;26:8,9;
29:14,22
**worth (4)**
27:4,4,5,24
**writing (2)**
28:21;29:11

**written (1)**
17:15

**Y**

**York (1)**
18:18

**Z**

**Zorkin (24)**
3:10,11;13:22,23;
16:16;17:6,21,24;
18:2;25:9;29:1,8,9,14,
22;30:8,9,13,15;31:3;
32:3,6,11,13
**Zorkin's (1)**
16:9

**1**

**1 (3)**
3:4;17:13;28:16
**10 (2)**
22:7,7
**11 (2)**
6:6;8:6
**11th (2)**
6:10,13
**12 (3)**
15:12;17:17;28:24
**12th (7)**
13:25;14:3,11;31:5,
8,9,11
**15 (8)**
19:7,8,11;26:1,14,
15,18;31:16
**1522 (1)**
28:11
**1522a (1)**
23:15

**2**

**2 (5)**
3:4,4;12:16;15:12;
20:6
**20 (1)**
3:1
**2022 (6)**
4:13,18;6:6,10,13;
8:6
**2023 (1)**
4:16
**2024 (1)**
3:1
**22 (1)**
4:18
**27 (3)**
11:11;12:24;14:7
**27th (6)**
11:15;12:25;13:4;
29:3,11;30:4

Case 2:23-bk-15574-NB  Doc 98  Filed 05/08/24  Entered 05/08/24 14:05:42  Desc
In Re: ALEKSANDR VITALIEVICH SABADASH
Main Document  Page 41 of 41

February 20, 2024

**3**

**3:32 (1)**
  3:1

**4**

**4 (2)**
  14:12;17:12
**4:09 (1)**
  28:16
**4:15 (1)**
  32:15

**5**

**5 (5)**
  11:9;14:7,12,17;
  15:12
**5fth (1)**
  13:19
**5th (15)**
  12:14,15,15,16;
  13:23;17:21;29:5,12,
  17,17;30:5,19;31:1,
  12,21

**8**

**8 (1)**
  22:7