1

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

-oOo-

In Re:                                    ) Case No. 2:23-Bk-15574-NB
                                          ) Chapter 15
ALEKSANDR VITALIEVICH                     )
SABADASH                                  ) Los Angeles, California
                                          ) Tuesday, April 9, 2024
                       Debtor.            ) 2:00 PM
_____

#2.00 CONT'D HRG RE:
APPLICATION FOR RECOGNITION
OF FOREIGN MAIN PROCEEDING,
OR IN THE ALTERNATIVE, FOR
RECOGNITION OF FOREIGN
NONMAIN PROCEEDING AND
CERTAIN RELATED RELIEF
FR. 11/14/23, 12/5/23,
12/19/23, 01/10/24, 2/20/24,
3/12/24

#3.00 CONT'D STATUS
CONFERENCE RE: RECOGNITION OF
A FOREIGN PROCEEDING
FR. 11/14/23, 12/5/23,
12/19/23, 01/10/24, 2/20/24,
3/12/24

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE NEIL BASON
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:
For the Debtor:              KEITH C. OWENS, ESQ.
                              Fox Rothschild LLP
                              10250 Constellation Boulevard
                              Suite 900
                              Los Angeles, CA 90067
                              (310)598-4150

                             MICHAEL ZORKIN, ESQ.
                              The Zorkin Firm
                              6320 Canoga Avenue
                              15th Floor
                              Woodland Hills, CA 91367
                              (323)493-8075

2

For Alexander Ivanovich     SCHUYLER G. CARROLL, ESQ.
Gavva, Foreign              (TELEPHONICALLY)
Representative:             ALEX STOLYAR, ESQ.
                             (TELEPHONICALLY)
                            Loeb & Loeb LLP
                            10100 Santa Monica Boulevard
                            Suite 2200
                            Los Angeles, CA 90067
                            (310)282-2000


For Alexander Adam and      RONALD HOWARD, ESQ.
Andrew Wood, Foreign        (TELEPHONICALLY)
Representatives to Golden    Togut, Segal & Segal LLP
Sphinx Limited:             One Penn Plaza
                             Suite 3335
                             New York, NY 10119
                             (212)594-5000


Court Recorder:             SHARON SUMLIN
                            United States Bankruptcy Court
                            Edward R. Roybal Federal Building
                            255 East Temple Street
                            Room 940
                            Los Angeles, CA 90012
                            (855)460-9641


Transcriber:                RIVER WOLFE
                            eScribers, LLC
                            7227 N. 16th Street
                            Suite #207
                            Phoenix, AZ 85020
                            (800) 257-0885


Proceedings recorded by electronic sound recording;
transcript provided by transcription service.

3

LOS ANGELES, CALIFORNIA, TUESDAY, APRIL 9, 2024, 2:31 PM

-oOo-

(Call to order of the Court.)

THE COURT:  All right.  So we're back on the Sabadash and Golden Sphinx matters.  I guess I should proceed with Sabadash first.  That's first on the calendar.  So we've got the continued status conference on recognition of foreign proceeding and the continued hearing on motion for relief from the automatic stay by Mr. Itkin.

No, sorry.  That's in Golden Sphinx.  Ah, man, got to keep these things straight.

There's the application for recognition of the foreign main proceeding, and there is the status conference in the Sabadash matter.

So let me start with that, and let me get appearances in court first.

MR. OWENS:  Okay.  Good afternoon, Your Honor.  Keith Owens of Fox Rothschild, appearing on behalf of Mr. Sabadash.  And I'm here with my cocounsel Michael Zorkin.

THE COURT:  Thank you.

All right.  And online.

MR. STOLYAR:  Good afternoon, Your Honor.  Alex Stolyar of Loeb & Loeb on behalf of Mr. Gavva.

THE COURT:  Okay.

MR. CARROLL:  And good afternoon, Your Honor.  Skylar

4

Carroll of Loeb & Loeb, also on behalf of Mr. Gavva.

THE COURT:  Thank you.

MR. HOWARD:  All right.  Your Honor, Ronald Howard of Togut, Segal & Segal, here for Andy Wood, Alexander Adam, foreign representatives to Golden Sphinx.

THE COURT:  Thank you.

Just one second.

Okay.  So on the Sabadash matter, the tentative ruling, which I gather you've all seen, if not, let me know, was to focus on this issue about the sanctions against the International Financial Club, aka IFC Bank, which is stated in Mr. Sabadash's supplemental brief to be the parent company of creditor Tavrichesky Bank.  And the assertion is that IFC is the sole shareholder of Tavrichesky.  And so I know that there is some discussion about the ultimate owner of those entities and attribution through ultimate ownership and so on, but I'm more concerned with the direct ownership here of these two entities.

And there's also some discussion about Mr. Gavva and the bankruptcy estate not being on the sanctions list.  But again, unless I'm misunderstanding something, it seems to me that there's at least an issue here about the public policy implications of permitting the hundred-percent subsidiary of an entity that's on the sanctions list from controlling assets that are here in the United States and whether that includes

5

physical assets or claims.

So I'd like to hear from Mr. Stolyar or Mr. Carroll about that.

MR. STOLYAR:  Yeah.  Understood, Your Honor.  This is Alex Stolyar speaking.

So it is true that IFC Bank, the parent company of Tavrichesky Bank, which is a minority creditor of the debtor's estate, is on the sanctions list.  But there are three reasons why that should not affect Your Honor's February 20 ruling.

Reason number one, Tavrichesky Bank is not the main creditor in Sabadash's Russian bankruptcy proceeding as falsely alleged by Mr. Sabadash.  Instead, Tavrichesky's claim is around 127 million rubles, while the claim of the other creditor, the main nonsanctioned creditor IFC Capital, is over 614 million rubles.  So it is IFC Capital, a nonsanctioned entity, that is the main creditor in the Russian proceeding, with a claim five times larger than the minority creditor Tavrichesky Bank.

And under OFAC rules, transactions with nonsanctioned entities or property are only blocked if a sanctioned person has a fifty percent or greater interest in such entity or property.  That is 31 CFR Section 587.406.  That is the governing statute, Your Honor.

And here, it is undisputed that neither Mr. Gavva nor the debtor could state itself for which he served as financial

6

manager on any sanctions list.  So the only question before the Court is does a sanctioned person have a fifty percent or greater interest in the debtor's estate, and it is undisputed that they do not.  And therefore, pursuant to Section 587.406, the governing statute, transactions with Mr. Gavva and the debtor's estate are not blocked.

To give Your Honor an analogy, this is analogous to a situation where you have a nonsanctioned corporation that has a minority shareholder who is on a sanctions list.  In that situation, it is black letter law that the nonsanctioned corporation may still engage in transactions in the United States and such transactions are not prohibited under OFAC rules.  And we cite case law to that effect to Your Honor in our papers.

That is In regarding: National Bank Trust, 2023 U.S. Dist. LEXIS 38284, a March 7, 2023 case from federal court in Connecticut.  And there, the federal court held that had the -- there was a Russian bank seeking relief in that case, which had a sanctioned shareholder.  And the Court held because the sanctioned shareholder had less than the fifty percent interest in the bank, the nonsanctioned bank was, and I quote, "not subject to blocking sanctions".

THE COURT:  So if I can kind of rephrase it back to you, analogous to a minority shareholder, here, you've got a minority creditor, and you're saying it would be going too far

Case 2:23-bk-15574-NB   Doc 99   Filed 05/08/24   Entered 05/08/24 14:11:09   Desc
Main Document      Page 7 of 33
**Aleksandr Vitalievich Sabadash**

7

to hold up the entire Russian insolvency proceeding based on the possibility of a benefit to a minority creditor that was on the sanctions list.  Have I got that right?

MR. STOLYAR:  That is exactly -- that is exactly right, Your Honor.  And it would --

THE COURT:  Okay.

MR. STOLYAR:  -- also be directly contrary to the statute and the case law.

And to address any concerns that any monies may be transferred to the sanctioned creditor, we submitted a proposed order to Your Honor that specifically states in the proposed order that there would be no transfers to Tavrichesky, no transfers of any assets to Russia without a prior court order.

So again, they tried to conflate -- Mr. Sabadash tries to conflate the financial manager Gavva with the creditors, but they're not one and the same.  Mr. Gavva is the financial manager.  He acts on behalf -- he tries to maximize the value of the estate.  He also tries to maximize that value for the benefit of the debtor.  Right.  So just because Mr. Gavva enters into a transaction, that's not the same as entering into a transaction with a minority creditor or with any of the creditors.  So that is the first reason, Your Honor.

The second reason is their contention that Tavrichesky Bank and IFC Capital, the two creditors, are affiliated entities because they're allegedly owned by the same person, we

8

point out to Your Honor how that contention is entirely unsupported by any evidence.  They have a conclusory statement in the declaration from their Russian lawyer, and the corporate registers they attach don't support that statement.  There's nothing in those corporate registers showing such joint ownership.

And the third reason is even if it was jointly owned, it still wouldn't matter because under OFAC rules, sanctions flow down.  They don't flow up.  Right.  So if a sanctioned person owns a company by more than fifty percent, the company is also sanctioned, but not vice versa.  Just because you have an investor or a shareholder in a sanctioned entity doesn't make that shareholder himself sanctioned.  And it certainly doesn't make other entities owned by that shareholder sanctioned.  And that's their argument, Your Honor.

And by the way, Mr. Prokhorov is a very well-known international businessman.  They have said so themselves.  He was on the Forbes list.  If the U.S. government wanted to put him on a sanctions list, he would be on a sanctions list.  He's not.  Mr. Prokhorov is not on any sanctions list.

So to sum up, what you have here is you have Mr. Gavva, who is not a sanctioned person.  You have the debtor's estate that is not a sanctioned entity, not sanctioned property.  And you have a minority creditor that has maybe twenty percent of the total claims that is sanctioned.  Under

Case 2:23-bk-15574-NB Doc 99 Filed 05/08/24 Entered 05/08/24 14:11:09 Desc
Main Document Page 9 of 33
**Aleksandr Vitalievich Sabadash**

9

those circumstances, Your Honor's ruling should stand. The public policy, very narrow, limited exception here, does not apply.

THE COURT: Thank you.

Mr. Owens or Mr. Zorkin.

MR. OWENS: Thank you, Your Honor. I will address most of these issues. I may end up asking Mr. Zorkin to join me, especially on the facts of common ownership and some of the issues in Russia.

So I'd like to start with the fact that it's undisputed, and we heard it, we heard it Mr. Stolyar, that International Financial Club is on the sanctions list. And in fact, International Financial Club, call them IFC, owns Tavrichesky Bank. That's not disputed.

What I think is very relevant, Your Honor, is the statutory scheme, the actual OFAC rules, because the language matters. And some of the terms that are used, they're not bankruptcy terms such as transfer or interest in property. And I really want to highlight some of the key provisions because I think this is relevant.

So Section 287.202(a) provides that any transfer -- I'm going to skip some language -- that's in violation of any provision of this part and that involves any property or interest in property blocked pursuant to Section 587.201 is null and void. It shall not be the basis for the assertion of

10

recognition of any interest of any right, remedy, power, or privilege with respect to such property or interest in such property.  And again, that's 587.202(a).

The phrase "interest in property" is, again, broad. It means any other property real, personal, or mixed tangible or intangible or interests therein, present, future, contingent.  But then it goes on to say, property also expressly includes judgments and liens.  And so that's Section 587.311.

Now, I want to highlight the term "transfer" because we're used to the terms transfer as a fraudulent transfer bankruptcy or preferential transfer.  It's different under the OFAC rules.  The term "transfer" means any actual or purported act or transaction -- I'll skip some language -- the purpose, intent or effect of which is to create any right, remedy, power, privilege, or interest with respect to any property. And then it sort of defines, lists out a number of examples of what a transfer is.  And one of the examples is the appointment of any agent, trustee, or fiduciary.

Let's just stop there for a minute.  If a financial manager is seeking recognition as a foreign representative, as an agent or a fiduciary, that falls within the definition of transfer.  Just by virtue of being in this case, seeking recognition, the recognition order is going to recognize and appoint him as an agent or fiduciary or trustee.  That's not

11

the typical language you would see in terms of transfer and definition of the Bankruptcy Code, but those are in the OFAC rules.

The issuance, the docketing, the filing, or levy of any order, judgment or decree, well, filing this action, you're essentially docketing, filing, or you have a judgment or decree that's being essentially filed by recognition. But also there's the state court action that was commenced as well. And we're back in the bankruptcy court, but that state court action is still pending. And it also includes attachment, injunctions, executions, or other judicial or administrative process or order.

And then a couple of other things. The acquisition of any interest of any nature whatsoever by reason of a judgment or decree of any foreign country, so if there is a acknowledgment of a Russian insolvency proceeding and that's going to be recognized by this Court, that would fall squarely within this section, this definition. And the acquisition of any security -- one of the assets is purportedly a claim or an interest, potentially an equity interest in a California entity that ultimately the foreign representative or financial manager wants to seek to attach.

The statute even makes clear that lawyers who provide legal services to or for the or on behalf of sanctioned entities are prohibited from enforcement of any lien, judgment,

12

arbitral award, decree, or other order.  And that's Section 587.560(d).

So Your Honor, it follows from the statutory scheme that recognition of this Chapter 15 proceeding is prohibited because recognition necessarily means that Tavrichesky Bank will acquire an interest by reason of a decree of a foreign country, the Russian bankruptcy decree, accomplish the appointment of an agent, trustee, or fiduciary, attempt to enforce foreign judgments against Mr. Sabadash, something that the bank has already tried to do through its agent Mr. Gavva in the state court action, and enabling Mr. Gavva to exercise control and levy on AFB shares, which is again essentially an acquisition of a security.  So all of this, even if ordered by this Court, would be null and void under the OFAC rules and regulations.

Mr. Gavva's argument that he's not sanctioned is really a red herring.  It's not relevant.  I mean, first, as a factual matter, they've already filed a state court action where they say, and we cite in our brief, they've said they were appointed, and essentially they're the assignee of the creditors' claims.  And the creditors are Tavrichesky Bank and IFC Capital.  So they've already said they're an assignee -- essentially, they're an agent of the banks.

Unlike a bankruptcy case in the United States, Your Honor, where you have a appointment of a trustee which is

13

overseen by the United States Trustee's office, et cetera, you don't have that here.  What you have is you have a meeting of creditors where the creditors, the two creditors in this case, actually hand-selected and picked Mr. Gavva as the financial manager.  That was their choice.  That was approved by the Court.

And so that -- and before the bankruptcy, Mr. Gavva sought to enforce the judgments, those bank judgments, sought to enforce those judgments in the United States in the state court.  Ultimately, that was denied because there was no standing.  And that's what prompted the recognition proceeding.

So Your Honor, to say that it's a different entity, that Mr. Gavva is not is not sanctioned, that the bankruptcy estate is not sanctioned, we're in a Chapter 15.  It's not bankruptcy estate.  It's you're recognizing a foreign bankruptcy estate in Russia.  That somehow, because that's not a sanction, that's really a red herring at best.

If you take it to its logical conclusion, Your Honor, any sanctioned person or entity could simply commence an action in Russia or in another court, in another jurisdiction, it doesn't have to be Russia, commence an action, seek the appointment of a financial manager that they hand select and then come to the United States to enforce the judgment.  And what's to stop a bank from setting up a special purpose entity, assign the claims, they're not on the sanctions list, and then

14

all of a sudden, they can circumvent the OFAC rules by simply setting up another entity, putting into bankruptcy, getting the financial manager to cleanse the sanctions.  That's not how it should work, Your Honor.  It's a trap for -- it really is -- it really would provide an incentive to game the system.

With respect to the percentage interest, that also is a red herring, Your Honor.  Whether it's fifty percent or five percent, it's a red herring.  In the Markus case, and Your Honor, we only had a very short time to brief this, and we had five pages.  And this issue didn't even arise until after the last hearing.  Right.  The sanctions happened, I think, a few days later.  So we included that in our brief.  It took space.  So we had five pages essentially in a few days.  So we hadn't thoroughly exhausted the issue.

But we've since done some research.  And in the Markus case, the United States Trustee -- or excuse me, the U.S. Department of Justice, its docket number 445, actually sent a letter which was submitted as part of the record.  And there was a letter to the counsel for the foreign representative, proposed foreign representative.

And what the proposed foreign representative proposed to do to sort of cleanse the transaction is to have an auction process, to run an auction process where they would sell the interest and property to a third-party that was not sanctioned and that that would have somehow cleansed the sanctions.  Money

Case 2:23-bk-15574-NB   Doc 99   Filed 05/08/24   Entered 05/08/24 14:11:09   Desc
Main Document      Page 15 of 33
**Aleksandr Vitalievich Sabadash**

15

would be used from the third-party to settle with one of the banks.  The other bank, it would not settle with the other bank, but the other bank would then get paid or satisfied from the estate in Russia, the bankruptcy estate in Russia.

And the Department of Justice objected.  They sent a letter out.  And one of the banks, by the way, only had a very small interest, as I think it was .19 percent.  It was VTB, which was sanctioned by the Department of Treasury's Office of Foreign Assets Control.  VTB had 99.81 percent of the estate's proceeds.  The other bank had -- I'm sorry.  VTB had .19 percent of the proceeds of the market estate.  And it didn't matter to the Department of Justice what the percentage was. It mattered that this process would obfuscate and create problems and essentially was a way to circumvent the sanctions determination.

I want to just read something to you, Your Honor. It's very short, but I think that this is very important.  And this is from the Department of Justice.

"As set forth below, assigning the claims to nonsanctioned entities through an auction process or similar arrangement would not resolve the underlying U.S. sanctions concerns, but would rather serve to further obfuscate the parties-in-interest involved. This type of shell game would undermine relevant U.S. sanctions, which are intended to prevent sanctioned

16

persons from availing themselves of the U.S. financial system by prohibiting U.S. persons from dealing in blocked property or property interest absent OFAC authorization.  Accordingly, and as discussed further below, U.S. sanctions regulations prohibit sanctions person and those acting on their behalf from utilizing such mechanisms to evade, avoid, or circumvent such restrictions."

And it goes on, Your Honor.  The point I'm trying to make is that -- and the United States has not made an appearance in this case for whatever reason.  Maybe because it was connected to the Golden Sphinx case, I don't know.  But the United States has not made an appearance.

But Your Honor, the way to cleanse this, the way to deal with this would be to go to OFAC and get approval, as there are licenses, et cetera.  There's a process that is done.  But the Court cannot remedy a sanctions violation by allowing the financial manager to try to clean things up.

I want to point out, too, that their proposal is that IFC would take over where Tavrichesky Bank left off.  If Tavrichesky Bank is a sanctioned entity that under the court -- under the Russian court's order is specifically funding, and it provides in the order, will fund the legal expenses, the expenses of Mr. Dupak (phonetic), I believe it was.  But ultimately, the agent of the of the financial manager, they're saying, well, we can just fix that problem.  We'll just have

17

IFC Capital fund it.

That's not what the order in Russia says.  And even if it did say that, to be able to circumvent the U.S. policy, right, the sanctions by the Department of Treasury and OFAC, that would be a circumvention of the law, Your Honor.  And it's manifestly contrary to the law of the United States to be able to do this.  That's what the United States Department of Justice said in this letter.  "It's contrary to U.S. sanctions as well as public policy to permit such reordering of assets and liabilities to avoid the sanctions implications of the proposed transaction."

And so Your Honor, I would just submit that that's what they're trying to do.  It doesn't matter if the bank has one percent or a hundred percent.  The fact that the bank is on the sanctions list, Tavrichesky Bank is on the sanctions list, and is going to be a beneficiary of the actions that are being commenced by Mr. Gavva, the litigation that was commenced on behalf of those two banks.  One was Tavrichesky Bank.

Since then, Tavrichesky Bank, through its parent company, through IFC, has been sanctioned -- you'd be opening up a can of worms, Your Honor, to permit the Chapter 15 recognition proceeding to be approved and confirm the Chapter 15 because then Mr. Gavva can go ahead and start to enforce the actions.  It would violate the sanctions even if he didn't try to enforce the judgment.  Just simply docketing it, filing it

18

here, it violates the plain language of the OFAC rules, Your Honor.

THE COURT:  Thank you.

Mr. Stolyar, briefly.

MR. STOLYAR:  Yeah, briefly, Your Honor, although there were a number of points here that were not addressed in the briefing, so I think it is fair for me to be able to address them.

The first point is they try to again conflate or expand the term "financial manager".  Mr. Gavva is not the financial manager of the creditors.  He's the financial manager of the debtor's estate.

They keep talking about blocked property.  Mr. Gavva is not managing any blocked property.  He's managing the debtor's estate.

Mr. Gavva is not answerable to the creditors.  He's answerable solely to the Russian court.  And we cite that in our papers, Your Honor.  It's not like Mr. Gavva can collect money and just disburse it to the creditors.  He would first need to get an order from the Russian court allowing him to make whatever disbursements need to be made.  And anything he does would also be subject to order of this Court.

Third point, they talked about assignment.  We never said Mr. Gavva was assigned to claims.  They're blatantly misstating what was said in the state court action.  The term

19

"assignment" there was used as an analogy because what happens in Russia, similar to what happens here, is the creditors lose all rights once the debtor declares bankruptcy.  They have no further rights.  After the bankruptcy, it is the financial manager under Russian law that has the right to manage the estate and to pursue any actions on behalf of the debtor's estate.  The creditors have no further rights as a matter of Russian law once bankruptcy was declared.

Last point is, and I think this is highly important, Your Honor, opposing counsel spoke for about ten minutes.  He failed to address the critical point and the case law we cited and the statute we cited.  If you have a sanctioned person that has less than a fifty-percent interest in a nonsanctioned entity, that nonsanctioned entity or nonsanctioned property is not affected.  So it would actually be a violation of U.S. law to find that Mr. Gavva and the debtor's estate are blocked simply because there is a minority creditor with about twenty percent of the total claims that are sanctioned.  They failed to respond to that completely, Your Honor.  And it's actually the argument you heard from their side that are red herrings.

And so if Your Honor looks at the actual law and the actual text of the governing statute, it's very clear here that the February 20 decision should stand and that there is no public policy exception here.

THE COURT:  Okay.  Thank you.  I --

20

MR. OWENS:  Your Honor, if I just may quickly respond to one thing --

THE COURT:  Very briefly.

MR. OWENS:  -- that was in his statement.  Okay.

Your Honor, Mr. Stolyar says that I misstated that they were an assignee.  And I was actually quoting or paraphrasing from their second amended complaint, where they say -- and it's attached to -- its docket number 74, page 68 of 108, paragraph fourteen.  Under Russian law, financial manager effectively serves as the assignee of the creditor's claims against the debtor's estate for the purpose of recovering and collecting the debtor's property in order to satisfy those creditor's claims.  In this case, the financial manager effectively serves as the assignee of the creditor's claims against the defendant.  So that's what I was referring to.

But even if that weren't the case, they've admitted -- I mean, they were acting essentially on behalf of the creditors.  I mean, they filed a collection action, which is in state court.  So I just think it's disingenuous.

The concept of, again, the fifty percent concept has to be fifty percent.  I think they're elevating -- what they're really doing is, yes, a sanctioned entity, it provides that a sanctioned entity will have -- there's a fifty-percent threshold in terms of a sanctioned entity.  Tavrichesky Bank, because it's a hundred-percent owned by a sanctioned entity, is

21

a sanctioned entity.  That's not in dispute.

With respect to IFC, we don't know, frankly.  Right.  I mean, in terms of ownership of IFC, we've not sought to discover who actually owns IFC.  There may be numerous owners of that entity.  And we don't know whether they're sanctioned or not.  Assuming that they're equity holders, high net worth folks, that's something that we don't know.  We could find out, we could get supplemented, but we don't know.  But it doesn't matter, Your Honor.

I want to say one other thing, and this is a case from the Northern District California.  It's a district court decision in 2023, November 27.  It's called Zurabova v. Block, Inc.  It's not a bankruptcy case, but in that case, Your Honor, there was a customer who purchased diamonds with a debit card.  And she was an individual.  She purchased the diamonds with a debit card that was linked to an Alfa-Bank account.  Alfa-Bank was a Russian bank.  I believe that later was sanctioned.  And Square, the payment processing company Square decided they were going to freeze the money and not release the money.

And so she filed an action in the U.S. district court to try to get the money back.  She was an innocent person.  Right.  She just paid using a credit card or debit card.  And the district court said, look, there's nothing we can do about it.  The bank is sanctioned.  You may be innocent, but there's nothing we can do about it.  There's no jurisdiction of the

22

court to address what you're trying -- the relief that you're trying to seek under the OFAC rules.  And you can go ahead and petition to OFAC, but I can't grant you relief.

And so Your Honor, the point we're trying to make is that, look, a trustee was appointed or equivalent of a trustee is what they're arguing, a fiduciary and agent, et cetera, was appointed.  And that specifically falls in the definition of, of transfer and does violate and run afoul of the OFAC rules.  And I'm happy to answer any questions the Court might have.

THE COURT:  The Zurabova v. Block --

MR. OWENS:  Let me give you the cite, Your Honor.

THE COURT:  Yeah.

MR. OWENS:  It's Zurabova, Z-U-R-A-B-O-V-A, v. Block, Inc.  And it was a Westlaw cite, 2023 WL 8188843.  And it's out of the Northern District of California, November 27th, 2023.

THE COURT:  Mr. Stolyar, we're going back and forth here quite a bit.  So Mr. Stolyar, I think I'm going to have to say keep it very, very short and last word.

MR. STOLYAR:  Last word, Your Honor.  Very brief.  The Zurabova case involved a transaction with a sanctioned person.  Here, we're not talking about any transaction with a sanctioned person.  Again, neither Mr. Gavva nor debtor's estate are sanctioned.  And any transactions further on in the future with Tavrichesky Bank would be prohibited by the proposed order we submitted.  And nothing we've heard from them rebuts the law

23

that basically says it's the fifty percent rule.

THE COURT:  Thank you.

Okay.  With that, I think the matter is once again submitted.  And let's talk about a continued hearing date.  I don't anticipate needing any further argument on any issues. This was the one that I wanted to get some more clarity on. And now, I have got to go look up a couple of things, but let's do a continued hearing about a month out.  But I expect well before then to issue a decision.

So I'm thinking May 14 at 2 o'clock.

Any objections?

MR. STOLYAR:  Works for me, Your Honor.

THE COURT:  Okay.

MR. OWENS:  That works for us as well, Your Honor.

THE COURT:  All right.  Okay.

MR. OWENS:  Your Honor, I don't know if it would be --

THE COURT:  Um-hum.

MR. OWENS:  -- helpful because it was hard for us to find, but it is a docketed entry.  I mentioned this letter from the U.S. Department of Justice.  I do have a copy if Your Honor wants to see it, or you can look it up.  I just --

THE COURT:  I think you mentioned the docket entry, and I --

MR. OWENS:  I did.

THE COURT:  -- took note of that.

24

MR. OWENS:  Okay.

THE COURT:  Let me just make sure that I've got that here.

MR. OWENS:  And apologies to the Court.  Had we had more time to brief the issue and more than five pages, we would have spent more time on this.  We still could probably write quite a bit more, but I think the main points have been made.

THE COURT:  Okay.  So I may have jotted this down. Docket 445?

MR. OWENS:  That's correct, Your Honor.

MR. ZORKIN:  Yes, Your Honor.

THE COURT:  Okay.

MR. ZORKIN:  The case number, because there are several dockets for In re: Markus in New York, like, there are probably about ten, so can I give you the case number?

THE COURT:  Yes.

MR. ZORKIN:  19-10096-mg, for Martin Glenn.

THE COURT:  All right.  Why don't you -- Mr. Stolyar, just to make sure that Mr. Stolyar has this and that everyone's on the same page here, why don't I actually direct you to file a declaration authenticating that, and then it's just on the docket.  It's easy for me to find.  It's easy for Mr. Stolyar to find.  And we're all working off the same thing.

MR. OWENS:  No problem.  That's fine, Your Honor. Thank you.

25

THE COURT:  Okay.  Okay.  I think that's everything for today.  Thank you.

MR. OWENS:  Thank you.

MR. STOLYAR:  Thank you, Your Honor.

THE COURT:  You're welcome.

(Whereupon these proceedings were concluded at 3:05 PM)

26

C E R T I F I C A T I O N

I, River Wolfe, certify that the foregoing transcript is a true and accurate record of the proceedings.

_____

/s/ RIVER WOLFE, CDLT-265

eScribers

7227 N. 16th Street, Suite #207

Phoenix, AZ 85020

Date:  May 6, 2024

In Re: ALEKSANDR VITALIEVICH SABADASH

April 9, 2024

**A**

**able (3)**
17:3,6;18:7
**absent (1)**
16:3
**accomplish (1)**
12:7
**Accordingly (1)**
16:4
**account (1)**
21:16
**acknowledgment (1)**
11:16
**acquire (1)**
12:6
**acquisition (3)**
11:13,18;12:13
**act (1)**
10:14
**acting (2)**
16:6;20:17
**action (10)**
11:5,8,9;12:11,18;
13:19,21;18:25;
20:18;21:20
**actions (3)**
17:16,24;19:6
**acts (1)**
7:17
**actual (4)**
9:16;10:13;19:21,
22
**actually (7)**
13:4;14:17;19:15,
19;20:6;21:4;24:20
**Adam (1)**
4:4
**address (5)**
7:9;9:6;18:8;19:11;
22:1
**addressed (1)**
18:6
**administrative (1)**
11:11
**admitted (1)**
20:16
**AFB (1)**
12:12
**affect (1)**
5:9
**affected (1)**
19:15
**affiliated (1)**
7:24
**afoul (1)**
22:8
**afternoon (3)**
3:17,22,25
**again (9)**
4:21;7:14;10:3,4;
12:12;18:9;20:20;

22:22;23:3
**against (4)**
4:10;12:9;20:11,15
**agent (8)**
10:19,22,25;12:8,
10,23;16:24;22:6
**Ah (1)**
3:10
**ahead (2)**
17:23;22:2
**aka (1)**
4:11
**Alex (2)**
3:22;5:5
**Alexander (1)**
4:4
**Alfa-Bank (2)**
21:16,16
**alleged (1)**
5:12
**allegedly (1)**
7:25
**allowing (2)**
16:16;18:20
**although (1)**
18:5
**amended (1)**
20:7
**analogous (2)**
6:7,24
**analogy (2)**
6:7;19:1
**Andy (1)**
4:4
**ANGELES (1)**
3:1
**answerable (2)**
18:16,17
**anticipate (1)**
23:5
**apologies (1)**
24:4
**appearance (2)**
16:10,12
**appearances (1)**
3:15
**appearing (1)**
3:18
**application (1)**
3:12
**apply (1)**
9:3
**appoint (1)**
10:25
**appointed (3)**
12:20;22:5,7
**appointment (4)**
10:18;12:8,25;
13:22
**approval (1)**
16:14
**approved (2)**
13:5;17:22

**APRIL (1)**
3:1
**arbitral (1)**
12:1
**arguing (1)**
22:6
**argument (4)**
8:15;12:16;19:20;
23:5
**arise (1)**
14:10
**around (1)**
5:13
**arrangement (1)**
15:21
**assertion (2)**
4:13;9:25
**assets (6)**
4:24;5:1;7:13;
11:19;15:9;17:9
**assign (1)**
13:25
**assigned (1)**
18:24
**assignee (5)**
12:20,22;20:6,10,
14
**assigning (1)**
15:19
**assignment (2)**
18:23;19:1
**Assuming (1)**
21:6
**attach (2)**
8:4;11:22
**attached (1)**
20:8
**attachment (1)**
11:10
**attempt (1)**
12:8
**attribution (1)**
4:16
**auction (3)**
14:22,23;15:20
**authenticating (1)**
24:21
**authorization (1)**
16:4
**automatic (1)**
3:9
**availing (1)**
16:1
**avoid (2)**
16:7;17:10
**award (1)**
12:1

**B**

**back (5)**
3:4;6:23;11:9;
21:21;22:16

**Bank (32)**
4:11,13;5:6,7,10,
18;6:15,18,21,21;
7:24;9:14;12:5,10,21;
13:8,24;15:2,3,3,10;
16:19,20;17:13,14,15,
18,19;20:24;21:17,
24;22:24
**bankruptcy (18)**
4:20;5:11;9:18;
10:12;11:2,9;12:7,24;
13:7,13,15,16;14:2;
15:4;19:3,4,8;21:13
**banks (4)**
12:23;15:2,6;17:18
**based (1)**
7:1
**basically (1)**
23:1
**basis (1)**
9:25
**behalf (9)**
3:18,23;4:1;7:17;
11:24;16:6;17:18;
19:6;20:17
**below (2)**
15:19;16:5
**beneficiary (1)**
17:16
**benefit (2)**
7:2,19
**best (1)**
13:17
**bit (2)**
22:17;24:7
**black (1)**
6:10
**blatantly (1)**
18:24
**Block (3)**
21:12;22:10,13
**blocked (7)**
5:20;6:6;9:24;16:3;
18:13,14;19:16
**blocking (1)**
6:22
**brief (6)**
4:12;12:19;14:9,12;
22:19;24:5
**briefing (1)**
18:7
**briefly (3)**
18:4,5;20:3
**broad (1)**
10:4
**businessman (1)**
8:17

**C**

**calendar (1)**
3:6
**CALIFORNIA (4)**

3:1;11:20;21:11;
22:15
**Call (2)**
3:3;9:13
**called (1)**
21:12
**can (11)**
6:23;14:1;16:25;
17:21,23;18:18;
21:23,25;22:2;23:21;
24:15
**Capital (5)**
5:14,15;7:24;12:22;
17:1
**card (4)**
21:14,16,22,22
**CARROLL (3)**
3:25;4:1;5:2
**case (20)**
6:13,16,18;7:8;
10:23;12:24;13:3;
14:8,16;16:10,11;
19:11;20:13,16;
21:10,13,13;22:20;
24:13,15
**certainly (1)**
8:13
**cetera (3)**
13:1;16:15;22:6
**CFR (1)**
5:22
**Chapter (4)**
12:4;13:14;17:21,
22
**choice (1)**
13:5
**circumstances (1)**
9:1
**circumvent (4)**
14:1;15:14;16:7;
17:3
**circumvention (1)**
17:5
**cite (5)**
6:13;12:19;18:17;
22:11,14
**cited (2)**
19:11,12
**claim (4)**
5:12,13,17;11:19
**claims (10)**
5:1;8:25;12:21;
13:25;15:19;18:24;
19:18;20:10,13,14
**clarity (1)**
23:6
**clean (1)**
16:17
**cleanse (3)**
14:3,22;16:13
**cleansed (1)**
14:25
**clear (2)**

In Re: ALEKSANDR VITALIEVICH SABADASH

April 9, 2024

11:23;19:22
**Club (3)**
4:11;9:12,13
**cocounsel (1)**
3:19
**Code (1)**
11:2
**collect (1)**
18:18
**collecting (1)**
20:12
**collection (1)**
20:18
**commence (2)**
13:19,21
**commenced (3)**
11:8;17:17,17
**common (1)**
9:8
**company (6)**
4:12;5:6;8:10,10;
17:20;21:18
**complaint (1)**
20:7
**completely (1)**
19:19
**concept (2)**
20:20,20
**concerned (1)**
4:17
**concerns (2)**
7:9;15:22
**concluded (1)**
25:6
**conclusion (1)**
13:18
**conclusory (1)**
8:2
**conference (2)**
3:7,13
**confirm (1)**
17:22
**conflate (3)**
7:14,15;18:9
**connected (1)**
16:11
**Connecticut (1)**
6:17
**contention (2)**
7:23;8:1
**contingent (1)**
10:7
**continued (4)**
3:7,8;23:4,8
**contrary (3)**
7:7;17:6,8
**control (2)**
12:12;15:9
**controlling (1)**
4:24
**copy (1)**
23:20
**corporate (2)**

8:3,5
**corporation (2)**
6:8,11
**counsel (2)**
14:19;19:10
**country (2)**
11:15;12:7
**couple (2)**
11:13;23:7
**Court (57)**
3:3,4,16,20,24;4:2,
6;6:2,16,17,19,23;7:6,
13;9:4;11:8,9,9,17;
12:11,14,18;13:6,10,
20;16:16,20;18:3,17,
20,22,25;19:25;20:3,
19;21:11,20,23;22:1,
9,10,12,16;23:2,13,
15,17,22,25;24:2,4,8,
12,16,18;25:1,5
**court's (1)**
16:21
**create (2)**
10:15;15:13
**credit (1)**
21:22
**creditor (13)**
4:13;5:7,11,14,14,
16,17;6:25;7:2,10,21;
8:24;19:17
**creditors (13)**
7:15,22,24;12:21;
13:3,3,3;18:11,16,19;
19:2,7;20:18
**creditors' (1)**
12:21
**creditor's (3)**
20:10,13,14
**critical (1)**
19:11
**customer (1)**
21:14

**D**

**date (1)**
23:4
**days (2)**
14:12,13
**deal (1)**
16:14
**dealing (1)**
16:2
**debit (3)**
21:14,16,22
**debtor (3)**
5:25;7:19;19:3
**debtor's (11)**
5:7;6:3,6;8:22;
18:12,15;19:6,16;
20:11,12;22:22
**decided (1)**
21:18

**decision (3)**
19:23;21:12;23:9
**declaration (2)**
8:3;24:21
**declared (1)**
19:8
**declares (1)**
19:3
**decree (6)**
11:5,6,15;12:1,6,7
**defendant (1)**
20:15
**defines (1)**
10:17
**definition (4)**
10:22;11:2,18;22:7
**denied (1)**
13:10
**Department (8)**
14:17;15:5,8,12,18;
17:4,7;23:20
**determination (1)**
15:15
**diamonds (2)**
21:14,15
**different (2)**
10:12;13:12
**direct (2)**
4:17;24:20
**directly (1)**
7:7
**disburse (1)**
18:19
**disbursements (1)**
18:21
**discover (1)**
21:4
**discussed (1)**
16:4
**discussion (2)**
4:15,19
**disingenuous (1)**
20:19
**dispute (1)**
21:1
**disputed (1)**
9:14
**Dist (1)**
6:16
**district (5)**
21:11,11,20,23;
22:15
**docket (5)**
14:17;20:8;23:22;
24:9,22
**docketed (1)**
23:19
**docketing (3)**
11:4,6;17:25
**dockets (1)**
24:14
**done (2)**
14:15;16:15

**down (2)**
8:9;24:8
**Dupak (1)**
16:23

**E**

**easy (2)**
24:22,22
**effect (2)**
6:13;10:15
**effectively (2)**
20:10,14
**elevating (1)**
20:21
**enabling (1)**
12:11
**end (1)**
9:7
**enforce (6)**
12:9;13:8,9,23;
17:23,25
**enforcement (1)**
11:25
**engage (1)**
6:11
**entering (1)**
7:20
**enters (1)**
7:20
**entire (1)**
7:1
**entirely (1)**
8:1
**entities (7)**
4:15,18;5:20;7:25;
8:14;11:25;15:20
**entity (19)**
4:24;5:16,21;8:12,
23;11:20;13:12,19,
24;14:2;16:20;19:14,
14;20:22,23,24,25;
21:1,5
**entry (2)**
23:19,22
**equity (2)**
11:20;21:6
**equivalent (1)**
22:5
**especially (1)**
9:8
**essentially (8)**
11:6,7;12:12,20,23;
14:13;15:14;20:17
**estate (19)**
4:20;5:8;6:3,6;
7:18;8:23;13:14,15,
16;15:4,4,11;18:12,
15;19:6,7,16;20:11;
22:22
**estate's (1)**
15:9
**et (3)**

13:1;16:15;22:6
**evade (1)**
16:7
**even (7)**
8:7;11:23;12:13;
14:10;17:2,24;20:16
**everyone's (1)**
24:19
**evidence (1)**
8:2
**exactly (2)**
7:4,4
**examples (2)**
10:17,18
**exception (2)**
9:2;19:24
**excuse (1)**
14:16
**executions (1)**
11:11
**exercise (1)**
12:11
**exhausted (1)**
14:14
**expand (1)**
18:10
**expect (1)**
23:8
**expenses (2)**
16:22,23
**expressly (1)**
10:8

**F**

**fact (3)**
9:10,13;17:14
**facts (1)**
9:8
**factual (1)**
12:18
**failed (2)**
19:11,18
**fair (1)**
18:7
**fall (1)**
11:17
**falls (2)**
10:22;22:7
**falsely (1)**
5:11
**far (1)**
6:25
**February (2)**
5:9;19:23
**federal (2)**
6:16,17
**few (2)**
14:11,13
**fiduciary (5)**
10:19,22,25;12:8;
22:6
**fifty (8)**

5:21;6:2,20;8:10;
14:7;20:20,21;23:1
**fifty-percent (2)**
19:13;20:23
**file (1)**
24:20
**filed (4)**
11:7;12:18;20:18;
21:20
**filing (4)**
11:4,5,6;17:25
**Financial (20)**
4:11;5:25;7:15,16;
9:12,13;10:20;11:21;
13:4,22;14:3;16:1,17,
24;18:10,11,11;19:4;
20:9,13
**find (5)**
19:16;21:7;23:19;
24:22,23
**fine (1)**
24:24
**first (7)**
3:6,6,16;7:22;
12:17;18:9,19
**five (5)**
5:17;14:7,10,13;
24:5
**fix (1)**
16:25
**flow (2)**
8:9,9
**focus (1)**
4:10
**folks (1)**
21:7
**follows (1)**
12:3
**Forbes (1)**
8:18
**foreign (13)**
3:7,12;4:5;10:21;
11:15,21;12:6,9;
13:15;14:19,20,21;
15:9
**forth (2)**
15:19;22:16
**fourteen (1)**
20:9
**Fox (1)**
3:18
**frankly (1)**
21:2
**fraudulent (1)**
10:11
**freeze (1)**
21:19
**fund (2)**
16:22;17:1
**funding (1)**
16:21
**further (6)**
15:23;16:4;19:4,7;

22:23;23:5
**future (2)**
10:6;22:23

## G

**game (2)**
14:5;15:24
**gather (1)**
4:9
**Gavva (23)**
3:23;4:1,19;5:24;
6:5;7:15,16,19;8:22;
12:10,11;13:4,7,13;
17:17,23;18:10,13,16,
18,24;19:16;22:22
**Gavva's (1)**
12:16
**Glenn (1)**
24:17
**goes (2)**
10:7;16:8
**Golden (4)**
3:5,10;4:5;16:11
**Good (3)**
3:17,22,25
**governing (3)**
5:23;6:5;19:22
**government (1)**
8:18
**grant (1)**
22:3
**greater (2)**
5:21;6:3
**guess (1)**
3:5

## H

**hand (1)**
13:22
**hand-selected (1)**
13:4
**happened (1)**
14:11
**happens (2)**
19:1,2
**happy (1)**
22:9
**hard (1)**
23:18
**hear (1)**
5:2
**heard (4)**
9:11,11;19:20;
22:25
**hearing (4)**
3:8;14:11;23:4,8
**held (2)**
6:17,19
**helpful (1)**
23:18
**herring (4)**

12:17;13:17;14:7,8
**herrings (1)**
19:20
**high (1)**
21:6
**highlight (2)**
9:19;10:10
**highly (1)**
19:9
**himself (1)**
8:13
**hold (1)**
7:1
**holders (1)**
21:6
**Honor (49)**
3:17,22,25;4:3;5:4,
23;6:7,13;7:5,11,22;
8:1,15;9:6,15;12:3,
25;13:12,18;14:4,7,9;
15:16;16:8,13;17:5,
12,21;18:2,5,18;
19:10,19,21;20:1,5;
21:9,13;22:4,11,19;
23:12,14,16,20;24:10,
11,24;25:4
**Honor's (2)**
5:9;9:1
**HOWARD (2)**
4:3,3
**hundred (1)**
17:14
**hundred-percent (2)**
4:23;20:25

## I

**IFC (14)**
4:11,13;5:6,14,15;
7:24;9:13;12:22;
16:19;17:1,20;21:2,3,
4
**implications (2)**
4:23;17:10
**important (2)**
15:17;19:9
**Inc (2)**
21:13;22:14
**incentive (1)**
14:5
**included (1)**
14:12
**includes (3)**
4:25;10:8;11:10
**individual (1)**
21:15
**injunctions (1)**
11:11
**innocent (2)**
21:21,24
**insolvency (2)**
7:1;11:16
**Instead (1)**

5:12
**intangible (1)**
10:6
**intended (1)**
15:25
**intent (1)**
10:15
**interest (18)**
5:21;6:3,20;9:18,
24;10:1,2,4,16;11:14,
20,20;12:6;14:6,24;
15:7;16:3;19:13
**interests (1)**
10:6
**International (4)**
4:11;8:17;9:12,13
**into (3)**
7:20,20;14:2
**investor (1)**
8:12
**involved (2)**
15:23;22:20
**involves (1)**
9:23
**issuance (1)**
11:4
**issue (6)**
4:10,22;14:10,14;
23:9;24:5
**issues (3)**
9:7,9;23:5
**Itkin (1)**
3:9

## J

**join (1)**
9:7
**joint (1)**
8:5
**jointly (1)**
8:7
**jotted (1)**
24:8
**judgment (6)**
11:5,6,14,25;13:23;
17:25
**judgments (5)**
10:8;12:9;13:8,8,9
**judicial (1)**
11:11
**jurisdiction (2)**
13:20;21:25
**Justice (6)**
14:17;15:5,12,18;
17:8;23:20

## K

**keep (3)**
3:11;18:13;22:18
**Keith (1)**
3:17

**key (1)**
9:19
**kind (1)**
6:23

## L

**language (5)**
9:16,22;10:14;11:1;
18:1
**larger (1)**
5:17
**last (4)**
14:11;19:9;22:18,
19
**later (2)**
14:12;21:17
**law (12)**
6:10,13;7:8;17:5,6;
19:5,8,11,15,21;20:9;
22:25
**lawyer (1)**
8:3
**lawyers (1)**
11:23
**least (1)**
4:22
**left (1)**
16:19
**legal (2)**
11:24;16:22
**less (2)**
6:20;19:13
**letter (6)**
6:10;14:18,19;15:6;
17:8;23:19
**levy (2)**
11:4;12:12
**LEXIS (1)**
6:16
**liabilities (1)**
17:10
**licenses (1)**
16:15
**lien (1)**
11:25
**liens (1)**
10:8
**limited (1)**
9:2
**linked (1)**
21:16
**list (14)**
4:20,24;5:8;6:1,9;
7:3;8:18,19,19,20;
9:12;13:25;17:15,15
**lists (1)**
10:17
**litigation (1)**
17:17
**Loeb (4)**
3:23,23;4:1,1
**logical (1)**

In Re: ALEKSANDR VITALIEVICH SABADASH

April 9, 2024

13:18

**look (4)**
21:23;22:5;23:7,21
**looks (1)**
19:21
**LOS (1)**
3:1
**lose (1)**
19:2

**M**

**main (5)**
3:13;5:10,14,16;
24:7
**makes (1)**
11:23
**man (1)**
3:10
**manage (1)**
19:5
**manager (16)**
6:1;7:15,17;10:21;
11:21;13:5,22;14:3;
16:17,24;18:10,11,11;
19:5;20:9,13
**managing (2)**
18:14,14
**manifestly (1)**
17:6
**March (1)**
6:16
**market (1)**
15:11
**Markus (3)**
14:8,15;24:14
**Martin (1)**
24:17
**matter (9)**
3:14;4:8;8:8;12:18;
15:12;17:13;19:7;
21:9;23:3
**mattered (1)**
15:13
**matters (2)**
3:5;9:17
**maximize (2)**
7:17,18
**may (8)**
6:11;7:9;9:7;20:1;
21:4,24;23:10;24:8
**maybe (2)**
8:24;16:10
**mean (4)**
12:17;20:17,18;
21:3
**means (3)**
10:5,13;12:5
**mechanisms (1)**
16:6
**meeting (1)**
13:2
**mentioned (2)**

23:19,22
**Michael (1)**
3:19
**might (1)**
22:9
**million (2)**
5:13,15
**minority (9)**
5:7,17;6:9,24,25;
7:2,21;8:24;19:17
**minute (1)**
10:20
**minutes (1)**
19:10
**misstated (1)**
20:5
**misstating (1)**
18:25
**misunderstanding (1)**
4:21
**mixed (1)**
10:5
**Money (5)**
14:25;18:19;21:19,
19,21
**monies (1)**
7:9
**month (1)**
23:8
**more (7)**
4:17;8:10;23:6;
24:5,5,6,7
**most (1)**
9:7
**motion (1)**
3:8

**N**

**narrow (1)**
9:2
**National (1)**
6:15
**nature (1)**
11:14
**necessarily (1)**
12:5
**need (2)**
18:20,21
**needing (1)**
23:5
**neither (2)**
5:24;22:22
**net (1)**
21:6
**New (1)**
24:14
**nonsanctioned (10)**
5:14,15,19;6:8,10,
21;15:20;19:13,14,14
**nor (2)**
5:24;22:22
**Northern (2)**

21:11;22:15
**note (1)**
23:25
**November (2)**
21:12;22:15
**null (2)**
9:25;12:14
**number (7)**
5:10;10:17;14:17;
18:6;20:8;24:13,15
**numerous (1)**
21:4

**O**

**obfuscate (2)**
15:13,23
**objected (1)**
15:5
**objections (1)**
23:11
**o'clock (1)**
23:10
**OFAC (15)**
5:19;6:12;8:8;9:16;
10:13;11:2;12:14;
14:1;16:3,14;17:4;
18:1;22:2,3,8
**off (2)**
16:19;24:23
**office (2)**
13:1;15:8
**once (3)**
19:3,8;23:3
**one (12)**
4:7;5:10;7:16;
10:18;11:19;15:1,6;
17:14,18;20:2;21:10;
23:6
**online (1)**
3:21
**only (4)**
5:20;6:1;14:9;15:6
**oOo- (1)**
3:2
**opening (1)**
17:20
**opposing (1)**
19:10
**order (15)**
3:3;7:11,12,13;
10:24;11:5,12;12:1;
16:21,22;17:2;18:20,
22;20:12;22:24
**ordered (1)**
12:13
**out (7)**
8:1;10:17;15:6;
16:18;21:7;22:14;
23:8
**over (2)**
5:14;16:19
**overseen (1)**

13:1
**OWENS (17)**
3:17,18;9:5,6;20:1,
4;22:11,13;23:14,16,
18,24;24:1,4,10,24;
25:3
**owned (4)**
7:25;8:7,14;20:25
**owner (1)**
4:15
**owners (1)**
21:4
**ownership (5)**
4:16,17;8:6;9:8;
21:3
**owns (3)**
8:10;9:13;21:4

**P**

**page (2)**
20:8;24:20
**pages (3)**
14:10,13;24:5
**paid (2)**
15:3;21:22
**papers (2)**
6:14;18:18
**paragraph (1)**
20:9
**paraphrasing (1)**
20:7
**parent (3)**
4:12;5:6;17:19
**part (2)**
9:23;14:18
**parties-in-interest (1)**
15:23
**payment (1)**
21:18
**pending (1)**
11:10
**percent (16)**
5:21;6:2,20;8:10,
25;14:7,8;15:7,9,11;
17:14,14;19:18;
20:20,21;23:1
**percentage (2)**
14:6;15:12
**permit (2)**
17:9,21
**permitting (1)**
4:23
**person (11)**
5:20;6:2;7:25;8:10,
22;13:19;16:5;19:12;
21:21;22:20,22
**personal (1)**
10:5
**persons (2)**
16:1,2
**petition (1)**
22:3

**phonetic (1)**
16:23
**phrase (1)**
10:4
**physical (1)**
5:1
**picked (1)**
13:4
**plain (1)**
18:1
**PM (2)**
3:1;25:6
**point (8)**
8:1;16:8,18;18:9,
23;19:9,11;22:4
**points (2)**
18:6;24:7
**policy (5)**
4:22;9:2;17:3,9;
19:24
**possibility (1)**
7:2
**potentially (1)**
11:20
**power (2)**
10:1,16
**preferential (1)**
10:12
**present (1)**
10:6
**prevent (1)**
15:25
**prior (1)**
7:13
**privilege (2)**
10:2,16
**probably (2)**
24:6,15
**problem (2)**
16:25;24:24
**problems (1)**
15:14
**proceed (1)**
3:5
**proceeding (9)**
3:8,13;5:11,16;7:1;
11:16;12:4;13:11;
17:22
**proceedings (1)**
25:6
**proceeds (2)**
15:10,11
**process (6)**
11:12;14:23,23;
15:13,20;16:15
**processing (1)**
21:18
**prohibit (1)**
16:5
**prohibited (4)**
6:12;11:25;12:4;
22:24
**prohibiting (1)**

**In Re: ALEKSANDR VITALIEVICH SABADASH**

April 9, 2024

16:2
**Prokhorov (2)**
8:16,20
**prompted (1)**
13:11
**property (19)**
5:20,22;8:24;9:18,
23,24;10:2,3,4,5,7,16;
14:24;16:3,3;18:13,
14;19:14;20:12
**proposal (1)**
16:18
**proposed (7)**
7:10,11;14:20,21,
21;17:11;22:24
**provide (2)**
11:23;14:5
**provides (3)**
9:21;16:22;20:22
**provision (1)**
9:23
**provisions (1)**
9:19
**public (4)**
4:22;9:2;17:9;
19:24
**purchased (2)**
21:14,15
**purported (1)**
10:13
**purportedly (1)**
11:19
**purpose (3)**
10:14;13:24;20:11
**pursuant (2)**
6:4;9:24
**pursue (1)**
19:6
**put (1)**
8:18
**putting (1)**
14:2

**Q**

**quickly (1)**
20:1
**quite (2)**
22:17;24:7
**quote (1)**
6:21
**quoting (1)**
20:6

**R**

**rather (1)**
15:22
**re (1)**
24:14
**read (1)**
15:16
**real (1)**

10:5
**really (6)**
9:19;12:17;13:17;
14:4,5;20:22
**Reason (7)**
5:10;7:22,23;8:7;
11:14;12:6;16:10
**reasons (1)**
5:8
**rebuts (1)**
22:25
**recognition (11)**
3:7,12;10:1,21,24,
24;11:7;12:4,5;13:11;
17:22
**recognize (1)**
10:24
**recognized (1)**
11:17
**recognizing (1)**
13:15
**record (1)**
14:18
**recovering (1)**
20:11
**red (5)**
12:17;13:17;14:7,8;
19:20
**referring (1)**
20:15
**regarding (1)**
6:15
**registers (2)**
8:4,5
**regulations (2)**
12:15;16:5
**release (1)**
21:19
**relevant (4)**
9:15,20;12:17;
15:24
**relief (4)**
3:8;6:18;22:1,3
**remedy (3)**
10:1,15;16:16
**reordering (1)**
17:9
**rephrase (1)**
6:23
**representative (5)**
10:21;11:21;14:19,
20,21
**representatives (1)**
4:5
**research (1)**
14:15
**resolve (1)**
15:21
**respect (4)**
10:2,16;14:6;21:2
**respond (2)**
19:19;20:1
**restrictions (1)**

16:7
**right (16)**
3:4,21;4:3;7:3,5,19;
8:9;10:1,15;14:11;
17:4;19:5;21:2,22;
23:15;24:18
**rights (3)**
19:3,4,7
**Ronald (1)**
4:3
**Rothschild (1)**
3:18
**rubles (2)**
5:13,15
**rule (1)**
23:1
**rules (11)**
5:19;6:13;8:8;9:16;
10:13;11:3;12:14;
14:1;18:1;22:2,8
**ruling (3)**
4:9;5:9;9:1
**run (2)**
14:23;22:8
**Russia (9)**
7:13;9:9;13:16,20,
21;15:4,4;17:2;19:2
**Russian (14)**
5:11,16;6:18;7:1;
8:3;11:16;12:7;16:21;
18:17,20;19:5,8;20:9;
21:17

**S**

**Sabadash (8)**
3:4,6,14,18;4:8;
5:12;7:14;12:9
**Sabadash's (2)**
4:12;5:11
**same (5)**
7:16,20,25;24:20,
23
**sanction (1)**
13:17
**sanctioned (37)**
5:20;6:2,19,20;
7:10;8:9,11,12,13,15,
22,23,23,25;11:24;
12:16;13:13,14,19;
14:24;15:8,25;16:20;
17:20;19:12,18;
20:22,23,24,25;21:1,
5,17,24;22:20,21,23
**sanctions (29)**
4:10,20,24;5:8;6:1,
9,22;7:3;8:8,19,19,20;
9:12;13:25;14:3,11,
25;15:14,22,25;16:5,
5,16;17:4,8,10,15,15,
24
**satisfied (1)**
15:3

**satisfy (1)**
20:12
**saying (2)**
6:25;16:25
**scheme (2)**
9:16;12:3
**second (3)**
4:7;7:23;20:7
**Section (7)**
5:22;6:4;9:21,24;
10:8;11:18;12:1
**security (2)**
11:19;12:13
**seek (3)**
11:22;13:21;22:2
**seeking (3)**
6:18;10:21,23
**seems (1)**
4:21
**Segal (2)**
4:4,4
**select (1)**
13:22
**sell (1)**
14:23
**sent (2)**
14:17;15:5
**serve (1)**
15:22
**served (1)**
5:25
**serves (2)**
20:10,14
**services (1)**
11:24
**set (1)**
15:19
**setting (2)**
13:24;14:2
**settle (2)**
15:1,2
**several (1)**
24:14
**shall (1)**
9:25
**shareholder (8)**
4:14;6:9,19,20,24;
8:12,13,14
**shares (1)**
12:12
**shell (1)**
15:24
**short (3)**
14:9;15:17;22:18
**showing (1)**
8:5
**side (1)**
19:20
**similar (2)**
15:21;19:2
**simply (4)**
13:19;14:1;17:25;
19:17

**situation (2)**
6:8,10
**skip (2)**
9:22;10:14
**Skylar (1)**
3:25
**small (1)**
15:7
**sole (1)**
4:14
**solely (1)**
18:17
**somehow (2)**
13:16;14:25
**sorry (2)**
3:10;15:10
**sort (2)**
10:17;14:22
**sought (3)**
13:8,8;21:3
**space (1)**
14:12
**speaking (1)**
5:5
**special (1)**
13:24
**specifically (3)**
7:11;16:21;22:7
**spent (1)**
24:6
**Sphinx (4)**
3:5,10;4:5;16:11
**spoke (1)**
19:10
**Square (2)**
21:18,18
**squarely (1)**
11:17
**stand (2)**
9:1;19:23
**standing (1)**
13:11
**start (3)**
3:15;9:10;17:23
**state (8)**
5:25;11:8,9;12:11,
18;13:9;18:25;20:19
**stated (1)**
4:11
**statement (3)**
8:2,4;20:4
**States (12)**
4:25;6:12;7:11;
12:24;13:1,9,23;
14:16;16:9,12;17:6,7
**status (2)**
3:7,13
**statute (6)**
5:23;6:5;7:8;11:23;
19:12,22
**statutory (2)**
9:16;12:3
**stay (1)**

In Re: ALEKSANDR VITALIEVICH SABADASH

April 9, 2024

3:9
**still (4)**
6:11;8:8;11:10;
24:6
**STOLYAR (19)**
3:22,23;5:2,4,5;7:4,
7;9:11;18:4,5;20:5;
22:16,17,19;23:12;
24:18,19,22;25:4
**stop (2)**
10:20;13:24
**straight (1)**
3:11
**subject (2)**
6:22;18:22
**submit (1)**
17:12
**submitted (4)**
7:10;14:18;22:25;
23:4
**subsidiary (1)**
4:23
**sudden (1)**
14:1
**sum (1)**
8:21
**supplemental (1)**
4:12
**supplemented (1)**
21:8
**support (1)**
8:4
**sure (2)**
24:2,19
**system (2)**
14:5;16:2

**T**

**talk (1)**
23:4
**talked (1)**
18:23
**talking (2)**
18:13;22:21
**tangible (1)**
10:5
**Tavrichesky (17)**
4:13,14;5:7,10,18;
7:12,23;9:14;12:5,21;
16:19,20;17:15,18,19;
20:24;22:24
**Tavrichesky's (1)**
5:12
**ten (2)**
19:10;24:15
**tentative (1)**
4:8
**term (4)**
10:10,13;18:10,25
**terms (6)**
9:17,18;10:11;11:1;
20:24;21:3

**therefore (1)**
6:4
**therein (1)**
10:6
**thinking (1)**
23:10
**third (2)**
8:7;18:23
**third-party (2)**
14:24;15:1
**thoroughly (1)**
14:14
**three (1)**
5:8
**threshold (1)**
20:24
**times (1)**
5:17
**today (1)**
25:2
**Togut (1)**
4:4
**took (2)**
14:12;23:25
**total (2)**
8:25;19:18
**transaction (7)**
7:20,21;10:14;
14:22;17:11;22:20,21
**transactions (5)**
5:19;6:5,11,12;
22:23
**transfer (11)**
9:18,21;10:10,11,
11,12,13,18,23;11:1;
22:8
**transferred (1)**
7:10
**transfers (2)**
7:12,13
**trap (1)**
14:4
**Treasury (1)**
17:4
**Treasury's (1)**
15:8
**tried (2)**
7:14;12:10
**tries (3)**
7:14,17,18
**true (1)**
5:6
**Trust (1)**
6:15
**trustee (7)**
10:19,25;12:8,25;
14:16;22:5,5
**Trustee's (1)**
13:1
**try (4)**
16:17;17:24;18:9;
21:21
**trying (5)**

16:8;17:13;22:1,2,4
**TUESDAY (1)**
3:1
**twenty (2)**
8:25;19:17
**two (4)**
4:17;7:24;13:3;
17:18
**type (1)**
15:24
**typical (1)**
11:1

**U**

**ultimate (2)**
4:15,16
**ultimately (3)**
11:21;13:10;16:24
**Um-hum (1)**
23:17
**under (11)**
5:19;6:12;8:8,25;
10:12;12:14;16:20,
21;19:5;20:9;22:2
**underlying (1)**
15:21
**undermine (1)**
15:24
**Understood (1)**
5:4
**undisputed (3)**
5:24;6:3;9:11
**United (11)**
4:25;6:11;12:24;
13:1,9,23;14:16;16:9,
12;17:6,7
**unless (1)**
4:21
**Unlike (1)**
12:24
**unsupported (1)**
8:2
**up (10)**
7:1;8:9,21;9:7;
13:24;14:2;16:17;
17:21;23:7,21
**used (4)**
9:17;10:11;15:1;
19:1
**using (1)**
21:22
**utilizing (1)**
16:6

**V**

**value (2)**
7:17,18
**versa (1)**
8:11
**vice (1)**
8:11

**violate (2)**
17:24;22:8
**violates (1)**
18:1
**violation (3)**
9:22;16:16;19:15
**virtue (1)**
10:23
**void (2)**
9:25;12:14
**VTB (3)**
15:7,9,10

**W**

**wants (2)**
11:22;23:21
**way (5)**
8:16;15:6,14;16:13,
13
**welcome (1)**
25:5
**well-known (1)**
8:16
**weren't (1)**
20:16
**Westlaw (1)**
22:14
**what's (1)**
13:24
**whatsoever (1)**
11:14
**Whereupon (1)**
25:6
**within (2)**
10:22;11:18
**without (1)**
7:13
**WL (1)**
22:14
**Wood (1)**
4:4
**word (2)**
22:18,19
**work (1)**
14:4
**working (1)**
24:23
**Works (2)**
23:12,14
**worms (1)**
17:21
**worth (1)**
21:6
**write (1)**
24:6

**Y**

**York (1)**
24:14

**Z**

**Zorkin (6)**
3:19;9:5,7;24:11,
13,17
**Zurabova (4)**
21:12;22:10,13,20
**Z-U-R-A-B-O-V-A (1)**
22:13

**1**

**108 (1)**
20:9
**127 (1)**
5:13
**14 (1)**
23:10
**15 (4)**
12:4;13:14;17:21,
23
**19 (2)**
15:7,10
**19-10096-mg (1)**
24:17

**2**

**2 (1)**
23:10
**2:31 (1)**
3:1
**20 (2)**
5:9;19:23
**2023 (5)**
6:15,16;21:12;
22:14,15
**2024 (1)**
3:1
**27 (1)**
21:12
**27th (1)**
22:15
**287.202a (1)**
9:21

**3**

**3:05 (1)**
25:6
**31 (1)**
5:22
**38284 (1)**
6:16

**4**

**445 (2)**
14:17;24:9

**5**

**587.201 (1)**
  9:24
**587.202a (1)**
  10:3
**587.311 (1)**
  10:9
**587.406 (2)**
  5:22;6:4
**587.560d (1)**
  12:2

### 6

**614 (1)**
  5:15
**68 (1)**
  20:8

### 7

**7 (1)**
  6:16
**74 (1)**
  20:8

### 8

**8188843 (1)**
  22:14

### 9

**9 (1)**
  3:1
**99.81 (1)**
  15:9