FILED & ENTERED

MAY 14 2024

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY sumlin    DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT
# CENTRAL DISTRICT OF CALIFORNIA
# LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>Aleksandr Vitalievich Sabadash,<br><br>Debtor. | Case No.:  2:23-bk-15574-NB<br><br>Chapter:  15<br><br>**MEMORANDUM DECISION REAFFIRMING RECOGNITION OF FOREIGN PROCEEDING, BUT ALSO SUBSTANTIALLY LIMITING FOREIGN REPRESENTATIVE'S POWERS**<br><br>Hearing:<br>Date:  May 14, 2024<br>Time:  2:00 p.m.<br>Place: Courtroom 1545<br>           255 E. Temple Street<br>           Los Angeles, CA 90012<br>(or via ZoomGov per posted procedures) |

Mr. Sabadash has filed briefs (dkt. 73, 86, collectively, the "Reconsideration Motion") and supporting papers (dkt. 74-79, 86-88, 91) seeking reconsideration of this Bankruptcy Court's Memorandum Decision (dkt. 67, the "Recognition MemDispo") granting Mr. Gaava's petition for recognition of the Russian Bankruptcy Proceeding of Mr. Sabadash.[1]  Mr. Gaava has filed opposing briefs (dkt. 80) and supporting papers (dkt. 81, 83, 85).  For the reasons set forth below this Court reaffirms its recognition of the foreign proceedings but also substantially limits Mr. Gaava's powers.

---

[1] Capitalized terms are defined in the Recognition MemDispo (unless defined otherwise herein).

**(1) STANDARDS FOR RECONSIDERATION**

This Bankruptcy Court "may relieve a party ... from a final judgment, order, or proceeding" for various reasons including "*mistake ... or excusable neglect*" or "*newly discovered evidence* that, with reasonable diligence, could not have been discovered [within the 14 day period for relief under Rule 59(b), Fed. R. Civ. P., incorporated by Rule 9023, Fed. R. Bankr. P.], or "*any other reason that justifies relief*." Rule 60(b) (Fed. R. Civ. P., incorporated by Rule 9024, Fed. R. Bankr. P.) (emphasis added). Mr. Sabadash appears to focus on two things: some factual developments that occurred after the Recognition MemDispo was issued (newly discovered evidence) and matters on which this Bankruptcy Court applied the law to the facts in a manner that he perceives as erroneous.

On the one hand, even if a party has not established grounds to excuse it from having raised legal or factual issues before, federal courts have their own flexibility in striving to reach the legally correct ruling on the facts presented. Accordingly this Bankruptcy Court approaches the issues with an open mind. *See, e.g., In re White Crane Trading Co., Inc.,* 170 B.R. 694, 700 (Bankr. E.D. Cal. 1994).

On the other hand, as Mr. Gaava argues:

> Reconsideration "is an extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources" (*Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003)) and "should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in controlling law." *Id*. (quoting *Kona Enterprises, Inc. v. Estate of Bishop*, 229 F. 3d 877, 890 (9th Cir. 2000)) (also noting that reconsideration "may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation."). [Gaava Brief (dkt. 80) pp. 2:6–13.]

**(2) MR. GAAVA STILL HAS STANDING**

The parties do not dispute that, as Mr. Sabadash points out (dkt. 86, p. 1:7-9), a Russian appellate court reversed an order that was an *alternative* basis for this Bankruptcy Court's ruling that Mr. Gaava has standing. *See* Recognition MemDispo

(dkt. 67) p. 5:14-16.  To that extent, Mr. Sabadash's Reconsideration Motion will be granted.

But Mr. Gaava still has standing.  Regardless which party's translation this Bankruptcy Court uses, the Russian appellate court's ruling does not undermine an earlier ruling of the Russian lower court.  That earlier ruling, as interpreted by this Bankruptcy Court, authorized Mr. Gaava to file legal actions in courts in the United States of America.  *Id.* p. 5:4-14.  *See also* dkt. 81 Ex. 3 (redlined translation of Russian appellate court ruling, showing both parties' versions) *and* dkt. 85 (explaining why appellate ruling does not undermine earlier lower court ruling).

**(3) THE LOCATION OF ASSETS**

Mr. Sabadash argues that "there is no basis to conclude that Vyborg's claim is Mr. Sabadash's primary asset."  Dkt. 73, p. 4:7-12.  Rather, he asserts, his "primary asset is AFB Trading One, Inc., here in California" ("AFB").  *Id.*  He cites authority that a bankruptcy court should not refuse to acknowledge the separateness of asset ownership between a debtor and the debtor's corporations.  *Id.*

But the Recognition MemDispo (dkt. 67 p. 7:6-8:14) did not refuse to distinguish between direct and indirect ownership.  In fact, it referred to the "indirect" asserted ownership of Vyborg and/or "indirect" ownership of claims to recover Vyborg.  In other words, this Bankruptcy Court has already considered and rejected the proposition that, for purposes of determining the center of main interest ("COMI"), the only thing that matters is direct ownership and that indirect ownership can be ignored.  To the contrary, this Bankruptcy Court's interpretation of the law is that a "center" of "main interest" is a more holistic review, for which indirect ownership is an important consideration.

Mr. Sabadash's Reconsideration Motion does not point to any manifest error of law or fact, or any newly discovered evidence, change in the law, or other ground for reconsideration.  On this issue the Reconsideration Motion will be denied.

**(4) RECENT DEVELOPMENTS WARRANT SOME GREATER LIMITS ON ANY TRANSFERS BY MR. GAAVA**

As set forth in the Recognition MemDispo (dkt. 67, p. 3:12-14), if recognition of a foreign proceeding would be "manifestly contrary to the public policy of the United States" (11 U.S.C. § 1506), then this Bankruptcy Court may "refuse" to take any action that would otherwise be authorized by Chapter 15 of the Bankruptcy Code.  The Recognition MemDispo recognized some possible concerns, namely that "(1) the major (or only) creditors in [the Russian Bankruptcy Proceeding of Mr. Sabadash] are Russian Banks; (2) *recognition might enable those Russian banks to seize assets here in the United States;* and (3) a key objective of the foreign policy of the United States has been to cut off funding for Russia's war against Ukraine by isolating the Russian financial system from the rest of the world."  Recognition MemDispo (dkt. 67) pp. 9:25-10:3 (citations omitted, emphasis in original).

But the Recognition MemDispo went on conclude that, based on the record presented, "it appears that recognition of the Russian Bankruptcy Proceeding would only allow the *adjudication of control of assets already in Russia*" which would have "no apparent effect" on funding the war in Ukraine.  Recognition MemDispo (dkt. 67) p. 10:4-8 (emphasis added).  The Recognition MemDispo also stated, "[i]n addition, Mr. Gaava's counsel orally offered to limit any order recognizing the Russian Bankruptcy Proceeding to *preclude any transfer of assets* from the United States absent further order of this Bankruptcy Court."  *Id.* p. 10:8-11 (emphasis added).

Mr. Sabadash argues both (i) that there is new evidence, namely the Biden Administration's addition to its sanctions list of the entity that wholly owns one of the banks at issue (IFC, which owns Tavrichesky Bank) (dkt. 73, pp. 2:5-3:6), and (ii) that Mr. Gaava effectively will be able to transfer assets out of the United States, by exercising control over the California corporation (AFB) that holds the claim to recover Vyborg.  Id. pp. 4:20-5:23.  Mr. Sabadash also cites a letter brief filed by the United States Attorney's Office in an unrelated case (dkt. 91, Ex. B to Ex. 1, at PDF pp. 16-22)

arguing that, if an entity is subject to sanctions, then even a tiny or indirect benefit to that entity is material and cannot be evaded by using U.S. assets to pay other debts and non-U.S. assets to pay that entity.

Before turning to the merits of Mr. Sabadash's arguments under § 1506, this Court must first determine whether he has standing to raise them.  Although neither party has addressed this issue, "[t]his Bankruptcy Court has an independent duty to examine its jurisdiction and authority," *In re AWTR Liquidation Inc.*, 547 B.R. 831, 833 (Bankr. C.D. Cal. 2016), and the "question of whether a party has standing is a threshold issue" upon which jurisdiction depends.  *Matter of E. Coast Foods, Inc.*, 80 F.4th 901, 905 (9th Cir. 2023), *cert. denied sub nom. Clifton Cap. Grp., LLC v. Sharp*, 144 S. Ct. 1064 (2024).

It could be argued that only the United States has standing to assert that recognition of a particular foreign insolvency proceeding should be denied as "manifestly contrary to the public policy of the United States."  11 U.S.C. § 1506.  Courts applying § 1506 have not taken that approach, however, and instead routinely address public-policy objections to recognition raised by parties other than the United States.  *See, e.g.*, *In re Iida*, 377 B.R. 243, 259 (9th Cir. BAP 2007) (addressing § 1506 objection raised by two Japanese citizens); *In re Ephedra Prod. Liab. Litig.*, 349 B.R. 333, 335-37 (S.D.N.Y. 2006) (addressing § 1506 objection raised by personal injury plaintiffs); *In re Rede Energia S.A.*, 515 B.R. 69, 98 (Bankr. S.D.N.Y. 2014) (addressing § 1506 objection raised by an ad hoc group of unsecured noteholders).

Section 1506 does not limit the parties entitled to invoke its provisions, and it is relevant to interpreting Congress' intent that it would be impracticable for the United States to monitor every chapter 15 petition to determine whether § 1506 is implicated. Accordingly, and consistent with the foregoing authorities, this Court determines that parties other than the United States have standing to present arguments under § 1506, and that it is appropriate to address the public policy arguments made by Mr. Sabadash and Mr. Gaava.  In response to Mr. Sabadash's contention that recognition would

circumvent U.S. sanctions against Tavrichesky Bank and therefore violate § 1506, Mr. Gaava argues that Tavrichesky Bank is not the largest creditor in the Russian Bankruptcy Proceeding (dkt. 80, p. 2:18-23 & n. 2) and that, under the applicable federal sanctions rules and policies, "transactions with non-sanctioned entities are only blocked" if a sanctioned entity "has a 50% or greater interest in that non-sanctioned entity." Gaava Brief (dkt. 80) pp. 2:24-3:4. He appears to reason by analogy that the public policy exception of 11 U.S.C. § 1506 should not apply because the Russian Bankruptcy Proceeding is less than 50% for the benefit of Tavrichesky Bank, and because Mr. Gaava and the bankruptcy estate he is administering are not themselves subject to sanctions.[2] *Id.* p. 3:5-8.

    This Bankruptcy Court is not persuaded that the public policy exception should only apply if Tavrichesky Bank were more than 50% of the creditor pool in the Russian Bankruptcy Proceeding or that public policy should be an all-or-nothing tool. Rather, this Bankruptcy Court interprets 11 U.S.C. § 1506 as providing more flexibility.

    On the one hand, the Russian Bankruptcy Proceeding should be recognized as a foreign main proceeding notwithstanding that one of its creditors, holding a minority claim, is subject to sanctions. Recognition may facilitate the preservation and recovery of assets for the eventual benefit of a large number of creditors in multiple bankruptcy proceedings – not just the Russian Bankruptcy Proceeding, but quite possibly also (i) the insolvency proceedings before the Royal Court of Jersey (United Kingdom) (the "Royal Court") with respect to Golden Sphinx Limited (Court Ref. 2021/149, Samedi Division), an entity in which Debtor asserts an indirect ownership interest , (ii) other litigation directly or indirectly involving Mr. Sabadash that is pending in the United

---

[2] Mr. Gaava also objects (dkt. 80 p. 3:9-13 & n. 3) to the assertions by Mr. Sabadash that both banks that are creditors in the Russian Bankruptcy Proceeding allegedly are owed by the same person, and that legally they are affiliates (and thus, implicitly, Mr. Sabadash is suggesting that the entire Russian Bankruptcy Proceeding is tainted, not just a minority creditor). Those objections are sustained, but it makes no difference to the outcome of this Memorandum Decision. *See* Trubina Decl. (dkt. 76) para. 10 (at p. 3:5-7), Zorkin Decl. (dkt. 78, 79) (authenticating translations of exhibits to Trubina Decl.), *and* Gaava Evid. Obj. (dkt. 83) (objecting to statements that "Mikhail Prokhorov owns both Onexim Group and IFC. Thus, both Tavrichesky Bank and IFC Capital are considered 'affiliated entities' because they fall under the umbrella of a group of companies owned by the same individual.").

Kingdom, and (iii) perhaps the bankruptcy case of *In re Golden Sphinx Limited* (Bankr. C.D. Cal., Case no. 2:22-bk-14320-NB).  For example, the former wife of Mr. Sabadash might benefit from recognition of Mr. Sabadash's Russian Bankruptcy Proceeding because she will now have a forum in which to be heard regarding any enforcement by Mr. Gaava of rulings in that Russian proceeding.

On the other hand, it is appropriate to limit not only the transfer of tangible assets but also any transfer of control over the Vyborg litigation in any way that would benefit Tavrichesky Bank.  That means prohibiting any transfer of control of AFB that would benefit the Russian Bankruptcy Proceeding, because any benefit accruing to that Russian bankruptcy estate presumably will benefit Tavrichesky Bank – *i.e.,* money is fungible, so if control of AFB would generate more assets to pay other creditors in the Russian Bankruptcy Proceeding then that will also increase the dividend to Tavrichesky Bank, which is manifestly against the public policy of the United States.  *See* dkt. 91, Ex. B to Ex. 1, at PDF pp. 16-22.  This Court assumes without deciding that, at least theoretically, it might be possible to structure any transfer of control of AFB in a way that would not run afoul of this public policy, but the burden is on Mr. Gaava to establish that any such alternative is viable.

In addition, more than just AFB is at stake.  It might be necessary for this Bankruptcy Court to limit Mr. Gaava's ability under 11 U.S.C. § 1520(a)(3) to "exercise the rights and powers of a trustee under and to the extent provided by sections 363 and 552," or for this Court to impose other appropriate limits upon the relief granted to Mr. Gaava in his capacity as the foreign representative of Debtor's Russian Bankruptcy Proceeding.  To provide an opportunity for any parties in interest to argue for such limits, and thereby safeguard the integrity of U.S. sanctions, this Court will prohibit Mr. Gaava from taking any action within the United States to enforce judgments entered against Debtor by the Russian Courts, absent further order of this Court.

This approach is consistent with the approach taken in *In re Markus*, No. 19-10096 (MG), 2022 WL 16556623 (Bankr. S.D.N.Y. Oct. 31, 2022) (unpublished

disposition).  In *Markus*, a recognition order was entered on April 1, 2019, before the onset of the war in Ukraine and the imposition of much more stringent sanctions against Russia.  *Id.* at *1–3.  On March 15, 2022, the *Markus* court "suspended the Markus [Foreign Representative's] ability to make any transfers outside the United States in light of newly imposed sanctions against Russia."  *Id.* at *3.

**(5) CONCLUSION**

Recently expanded sanctions by the Biden Administration have changed the landscape.  Although it is still appropriate to recognize the Russian Bankruptcy Proceeding as the COMI, that recognition must be limited so as not to be "manifestly contrary to the public policy of the United States" of sanctioning Tavrichesky Bank.  11 U.S.C. § 1506.

This Bankruptcy Court will not attempt to predict precisely what Mr. Gaava will or will not be able to do within the bounds of the foregoing limitation. That will depend on the precise circumstances presented, and it might be necessary or appropriate for him to apply to an authority that administers the sanctions.  *See* p. 3 of U.S. Atty letter (Ex. B to Ex. 1 to dkt. 91, at PDF p. 19) (referring to a process for review, licensing, and authorization by the U.S. Department of the Treasury's Office of Foreign Assets Control ("OFAC")).  These are issues for another day.

//

Mr. Sabadash is directed, within seven days of the date of entry of this Memorandum Decision on the docket, to draft a proposed order implementing this Memorandum Decision and provide a copy to Mr. Gaava.  The parties are then directed to meet and confer regarding any disagreements as to the wording of the proposed order.  Not later than 21 days after entry of this Memorandum Decision Mr. Sabadash is directed to lodge his form of proposed order, and if Mr. Gaava disagrees with that form he is directed to lodge his own form within two court days thereafter.

###

Date: May 14, 2024

Neil W. Bason
United States Bankruptcy Judge